554

CITY OF FORDYCE, Arkansas, et al. *v.* Gary VAUGHN, et al.

89-251                                          781 S.W.2d 6

Supreme Court of Arkansas
Opinion delivered December 11, 1989

*Thomas L. Mays*, for appellant.

*Robert, Harrell & Lindsey, P.A.*, by: *Allen P. Roberts*, for appellee.

JOHN I. PURTLE, Justice. This is an appeal from the chancellor's decree voiding a rezoning ordinance by the City of Fordyce because the city failed to comply procedurally with the zoning ordinance it had adopted earlier. The city argues that the court erred in declaring the ordinance invalid. The appellees dispute the appellants' argument for reversal, and, by way of counter-appeal insist that Alderman Marvin O'Mary should have refrained from voting because of a conflict of interest and that the action by the City Council was arbitrary and capricious. We hold that the chancellor correctly determined that the city did not substantially comply with its own ordinance regarding amendments to the zoning code.

In 1956, the City of Fordyce enacted Ordinance No. 609, which established a city planning commission. The commission was charged with establishing an overall street and property zoning plan. The ordinance provided that: "On acceptance of a plan or plans by the City Council of the City of Fordyce, they shall be and become in full force and effect binding upon all persons with the force of law." The ordinance further provided:

> Whenever a plan has been adopted by the City Planning Commission, filed for record and accepted by the City Council, the same shall not be changed, altered or amended except by the procedure required by said Act 108 of 1929 as amended by said Act 295 of 1937 for the adoption of a plan as specified above.

> Whenever a plan or plans have been so adopted, filed and become effective, no new street, square, park or other public way, ground or open space or any public building or structure or public utility, whether publicly or privately owned, shall be constructed or authorized to be constructed in any section or district of the planning jurisdiction embraced within a plan or plans until the location, character, and extent thereof shall have been submitted to the City Planning Commission in the manner prescribed in said Act 108 of 1929, as amended by said Act 295 of 1937.

In 1957, the City of Fordyce enacted Ordinance No. 624,

which regulated amendments to the zoning ordinance. Chapter 6 of Ordinance No. 624 concerned initiation of changes to the zoning plan. It provided that the City Council, the Planning Commission, or one or more individuals owning property in the area affected, could initiate changes to the zoning regulations and maps. However, the procedure for handling the amendments to the zoning ordinance is stated in Section 2 of Chapter 6 as follows: "The Planning Commission shall set hearing[s] on all proposed changes to the Zoning Map. . . ." The ordinance also provides that the Planning Commission will notify all persons within affected areas of the "time and place of the public hearing on the proposed change." Section 2(e) states:

> No application for a change of the Zoning Ordinance may be resubmitted within 12 months from the date of action by the City Council unless the Planning Commission finds that a substantial change in conditions has occurred.

The facts reveal that Dennis Bailey purchased land from the Fordyce Public School District which had formerly been used as a school site. When he purchased the property, he knew that it was zoned residential, R-1. He understood that he would have to get the property rezoned in order to use it for a planned convenience store. The use he intended required commercial zoning, C-1.

Bailey initiated the proposed zoning amendment to the Planning Commission in June 1987. The Commission recommended to the City Council on July 9, 1987, that the zoning request be denied. Nevertheless, on November 16, 1987, the City Council rezoned the property from R-1 to C-1 through enactment of Ordinance No. 879. On December 8, 1987, the City Council repealed Ordinance No. 879 by enactment of Ordinance No. 880, which reestablished the zoning of the property as R-1. On February 9, 1988, the City Council enacted Ordinance No. 881, which rezoned the property in question as C-1.

The appellees filed suit on February 29, 1988, challenging the validity of Ordinance No. 881. On August 1, 1988, the chancellor entered a decree holding Ordinance No. 881 to be null and void. The court, moreover, enjoined enforcement of Ordinance No. 881 and declared the property to be zoned R-1.

The city enacted Ordinances No. 609 and No. 624 pursuant to the provisions of Ark. Code Ann. § 14-56-420 and § 14-56-422 (1987). The former section provides:

> Any of the recommended ordinances and regulations that may be prepared by the commission shall be adopted or amended only in conformance with procedures specified in § 14-56-422.

The latter section provides, in pertinent part:

> All plans, recommended ordinances, and regulations shall be adopted through the following procedure:
>
> (1)(A) The planning commission shall hold a public hearing on the plans, ordinances, and regulations proposed under this subchapter.
>
> (B) Notice of public hearing shall be published in a newspaper of general circulation in the city, at least one (1) time fifteen (15) days prior to the hearing.
>
> (2) Following the public hearing, proposed plans may be adopted and proposed ordinances and regulations may be recommended as presented, or in modified form, by a majority vote of the entire commission.
>
> (3) Following its adoption of plans and recommendation of ordinances and regulations, the commission shall certify adopted plans or recommended ordinances and regulations to the legislative body of the city for its adoption.

The appellants rely primarily upon the case of *Mings* v. *City of Fort Smith*, 288 Ark. 42, 701 S.W.2d 705 (1986). The *Mings* case involved a proposal by a hospital to rezone property from R-2 (residential) to T-1 (transitional). The change was granted, conditioned on the hospital maintaining a buffer zone between the residential and transitional property. A dispute over the use of the property arose when the hospital developed a nine-car parking lot in the area set aside as a buffer zone. Although the mini-parking lot did not violate the R-2 zoning ordinance, the hospital had agreed not to construct it. After objections were raised, the hospital shut the lot down and sought permission, through the Planning Commission, to reopen the lot. The Planning Commis-

sion denied the request. No appeal was had at the time, but subsequently the parking lot question appeared on the agenda for the Fort Smith Board of Directors, which resubmitted the matter to the Commission for reconsideration. The Planning Commission sent out notices, established a hearing date, and generally followed the procedures set out for initiating changes in the zoning plan. Although the Planning Commission again denied the request for the parking lot, the Board of Directors overrode or ignored the recommendation and permitted use of the parking lot. Factually and procedurally, the *Mings* case is clearly distinguishable from the present case.

After the City of Fordyce repealed the first ordinance rezoning the property, there was nothing left for the City Council to do concerning this particular matter. The property had been restored to its original R-1 zoning. The net effect of Ordinance No. 880 was to nullify Ordinance No. 879. In the words of the state law, the ordinance had been recalled. The zoning request was not again referred to the Planning Commission before the enactment of Ordinance No. 881 some two months later. Although the city was granted the right in its zoning ordinance to initiate hearings or changes, it was not empowered to make zoning changes without first having the Planning Commission consider the request. Ordinance No. 624 expressly states: "The Planning Commission shall set hearings on *all* proposed changes to the zoning map . . . ." [Emphasis added.]

The *Mings* case relied upon *Potocki* v. *City of Fort Smith*, 279 Ark. 19, 648 S.W.2d 462 (1983), and *Taggart and Taggart Seed Co.* v. *City of Augusta*, 278 Ark. 570, 647 S.W.2d 458 (1983). The *Mings* opinion alluded to *Taggart* in the following terms: "[W]e struck down a city's attempt to bypass completely its planning commission in the face of its ordinance requiring that zoning matters be presented first to the planning commission and then to the board. There, again, was a flagrant abuse and no hint of substantial compliance."

The *Mings* opinion also relied upon *Potocki*, noting that: "In that case the city flagrantly ignored its own requirement that zoning petitions not be resubmitted until one year after denial. In contrast, we find no mandate in this case [*Mings*] saying the board may not suggest reconsideration by the planning commis-

sion." In *Potocki* we held that there was no substantial compliance with the germane ordinance.

■ It is fundamental that cities do not have inherent authority to enact legislation. Such authority is dependent upon the authority granted by the Constitution and the General Assembly. *City of Little Rock* v. *Raines*, 241 Ark. 1071, 411 S.W.2d 486 (1967). The cities have been granted the authority by the General Assembly to establish zoning commissions and to provide for amendments to zoning ordinances. The City of Fordyce took advantage of that grant of power through its enactment of Ordinances No. 609 and No. 624. The ordinances do not provide for the city government to change an ordinance without a public hearing called by the Planning Commission. The same situation existed in *Taggart*, where we stated:

> The ordinance adopted does not provide for the alternative method of amendment of boundaries, but, instead, provides for amendment only through the complete planning procedure. That choice of procedures does not conflict with the enabling statute for it simply continues to authorize the more extensive planning procedure.

The facts in the *Potocki* case were quite similar to those in the case now before us. The question in *Potocki* was whether the Board of Directors could rezone lots within a year from the time of the rejection of the first petition for rezoning of the same two lots. We upheld the chancellor's decision that rezoning could not be considered within a year following rejection, stating:

> Cities possess only the powers granted to them. They have no inherent powers and must act only with powers delegated by the Arkansas Constitution or statutes. *City of Little Rock* v. *Raines*, 241 Ark. 1071, 411 S.W.2d 486 (1967). Zoning powers exercised by the city of Fort Smith during the proceedings involved herein are derived from Act 186 of 1957, codified in Ark. Stat. Ann. §§ 19-2825 et seq. (Repl. 1980). Act 186 of 1957 requires the planning commission to review a petition for rezoning prior to the legislative body of the city considering the matter. Ark. Stat. Ann. § 19-2827(f) states in part:

> > After adoption and filing as hereinafter provided,

of a plan or plans, no public way, ground, or open space . . . shall be acquired, constructed, or authorized, unless such a project, proposal or development has been submitted to the planning commission for review, recommendation and approval as to its conformity with the plan or plans . . . .

■■ Nothing required the City of Fordyce to create a planning commission or to delegate authority to it as was done in Ordinance No. 624. However, having chosen to do so, the city must abide by its own decisions until such time as the ordinance is legally altered or repealed in accordance with the law. We have many times held that a city's failure to substantially comply with the procedural requirements of enabling legislation rendered a subsequent ordinance invalid. See *Potocki, Taggart*, and *Mings*. See also *City of Searcy* v. *Roberson*, 224 Ark. 344, 273 S.W.2d 26 (1954). As we stated in *Potocki*: "A city simply cannot pass procedural ordinances they expect to be followed by their residents and then conveniently ignore them themselves. A legislative body must substantially comply with its own procedural policies." See *Maxwell* v. *Southside School Dist.*, 273 Ark. 89, 618 S.W.2d 148 (1981).

We take note of the appellants' argument that this rezoning proposal was continuously before the City Council from July 1987 until enactment of Ordinance No. 881 in February 1988. The record does not reveal that the subject was carried over from 1987 until the council acted upon it in 1988. Although the city had the right to initiate zoning changes, it did not have the right to rezone the property until the Planning Commission acted upon it. The appellant argues that the subject of Ordinance No. 881 was previously considered by the Commission. It would require conjecture and speculation to hold that this matter was continuously before the board from July 1987 until February 1988. Ordinance No. 880 put an end to the request for rezoning by the landowner. Any subsequent action by the city government must be in compliance with the procedures established by Ordinance No. 624 and the state laws.

■ There was no substantial compliance with its own zoning ordinance by the City of Fordyce in the enactment of Ordinance No. 881. Therefore, the chancellor's ruling was

correct. However, the court does not have the authority to rezone the property. *City of Conway* v. *Conway Housing Authority*, 266 Ark. 404, 584 S.W.2d 10 (1979).

■ We do not reach the appellee's counterclaim concerning the arbitrariness of the ordinance. Neither do we reach the argument that Alderman Marvin O'Mary had a financial conflict of interest and should have refrained from voting on the ordinance. While there may be merit in the argument, it was not considered by the trial court. Further, it is not likely to arise again if the ordinance is reconsidered.

Affirmed.

DUDLEY and GLAZE, JJ., concur.

TOM GLAZE, Justice, concurring. While I concur with its conclusion, I believe the majority opinion's logic is flawed. The following chronology of events is important:

| | |
|---|---|
| June 15, 1987 | — Landowner, Bailey, applied to rezone his property from Residential 1 to Commercial 1. |
| July 9, 1987 | — Fordyce Zoning and Planning Commission denied Bailey's application. |
| November 16, 1987 | — Fordyce City Council overturned its Planning Commission's decision by passing Ordinance No. 879, which rezoned the Bailey property to Commercial 1. |
| December 8, 1987 | — Fordyce City Council changed its prior decision by passing Ordinance No. 880, which repealed Ordinance No. 879. If effective, this council action would revert property to Residential 1. |

February 9, 1988     — Fordyce City Council again changed its collective mind by passing Ordinance No. 881, which rezoned the Bailey property to Commercial 1.

The majority court holds that, because the City Council failed to refer the Bailey zoning matter back to the Planning and Zoning Commission before passing Ordinance No. 881 on February 9, the council had not substantially complied with its own zoning code; thus, its passage of Ordinance No. 881 was vitiated. If the majority is correct, the City Council action in enacting Ordinance No. 880 is likewise invalid, since the Council also failed to return this same matter to the Planning and Zoning Commission before Ordinance No. 880's passage. Conversely, if the Council enactment of Ordinance No. 880 was valid without the Council having returned the Bailey zoning matter to the Commission for its reconsideration, the Council's enactment of Ordinance No. 881 under the same circumstances must also be valid. That being so, the Council's action on December 8, 1987, and February 9, 1988, would both be either valid or invalid, depending on this court's construction of the relevant Municipal Planning Laws (Ark. Code Ann. §§ 14-56-401 to -425 (1987)) and Fordyce's own zoning code ordinances.

My view is that the City Council had ample authority to take the action it did when passing both Ordinance 880 and 881. Among other things, § 14-56-422, which provides for the adoption of plans, ordinances and regulations regarding zoning matters, provides in relevant part as follows:

> (4) The legislative body of the city *may* return the plans and recommended ordinances and regulations to the commission for further study or recertification or, by a majority vote of the entire membership, may, by ordinance or resolution, adopt the plans and recommended ordinances or regulations submitted by the commission. However, *nothing in this subchapter shall be construed to limit the city council's authority to recall the ordinances and resolutions by a vote of a majority of the council.* (Emphasis added.)

Clearly, § 14-56-422(4) authorized the Fordyce City Coun-

cil to reconsider its earlier ordinances and actions pertaining to the Bailey zoning matter. While Fordyce's own planning ordinance, Ordinance No. 624, provides "no application for a change of the zoning ordinance may be resubmitted within 12 months [from the Council's denial] . . . ," such limitation pertains to the applicant's action, not that of the Council's. This is as it should be. A city council should not be bound only to one consideration or vote on a controversial zoning proposal. If the council decides later that it made an error, it should not be required to return the matter to its Planning and Zoning Commission before being able to correct the council's mistake. By the same token, an applicant should not be in a position to force the council to continue to reconsider his or her zoning application if the council determines any such reconsideration would be a waste of time; thus, the one-year limitation upon the applicant's right to such a reconsideration. In this way, § 14-56-422(4) is in harmony with the city's one-year limitation ordinance provision.

I should add that this case is unlike the cases cited by the majority, *Potocki* v. *City of Ft. Smith*, 279 Ark. 19, 648 S.W.2d 462 (1983) and *Taggart and Taggart Seed Co.* v. *City of Augusta*, 278 Ark. 570, 647 S.W.2d 458 (1983). In *Taggart*, Augusta's City Council ignored its planning commission and zoning code ordinance altogether, by passing a zoning ordinance without the zoning request ever having been considered by Augusta's Commission. The *Potocki* case involved an applicant-landowner's second application to Ft. Smith's Planning Commission within one year of the city and board's action rejecting the applicant's first application. This court held the applicant's second petition was premature since it violated the city's zoning code ordinance, which limited an applicant's resubmission until at least one year after the board's denial of his first application.

While I disagree with the majority court's reasoning on this point, I would still affirm the chancellor's decision. The chancellor concluded, correctly I believe, that one of the councilmen, Mr. Marvin O'Mary, had a conflict of interest when voting on Ordinance No. 881. Mr. O'Mary is a public accountant, and Mr. Bailey, the applicant in this case, was a client of O'Mary's when Bailey's zoning request came before the council. O'Mary candidly conceded that had he taken a position contrary to Bailey's request, O'Mary would not have received $6,500 a year from

Bailey. Unquestionably, O'Mary had an economic stake in rezoning Bailey's property at the time he cast his vote in Bailey's favor. He also testified he gave no weight to the Commission's decision denying Bailey's request. Had O'Mary not voted, Bailey's application would have received two votes with three council members voting against rezoning. Because O'Mary's vote caused a tie vote (3-3), the mayor was called upon to cast the deciding vote, which he cast in favor of the rezoning requested by Bailey.

Arkansas prohibits council members from being directly, or indirectly, interested in the profits of any contract for the furnishing of supplies, equipment, or services to the municipality unless the governing body of the city shall have enacted an ordinance permitting the members to do so and prescribing the extent of this authority. *See* Ark. Code Ann. § 14-42-107(b)(1) (1987). Although § 14-42-107(b)(1) is not exactly on point, this court, in considering that provision in *Price* v. *Edmonds*, 232 Ark. 381, 337 S.W.2d 658 (1960), recognized as still viable the common law rule which prohibits municipal officers from self-dealing in regard to the sale of materials as well as in contracts or jobs for work or services. The general rule relating to personal interests retained by a voting council member as set out in 56 Am. Jur. 2d *Municipal Corporations* § 142 (1971) is as follows:

> It is thoroughly established that a member of a municipal council who has a direct personal interest in a matter coming before the council is not eligible to vote thereon. Some jurisdictions have adopted the view that the fact that a member is disqualified by interest does not necessarily invalidate the action of the council if his vote is not necessary to a majority. On the other hand, it has been held that if his vote is determinative in favor of action in his interest, such action is void.

Here, O'Mary's vote was dispositive of the rezoning request made by Bailey, and I would hold O'Mary's action was void. As previously discussed, the chancellor held Ordinance No. 881 invalid because the Council did not first return the rezoning matter to the City's Commission. While the chancellor was wrong in his reasoning, I would affirm his decision in this *de novo* review on the basis Ordinance No. 881 failed to receive the necessary majority vote, since O'Mary's vote was invalid.

For the above reasons, I would affirm.

DUDLEY, J., joins this concurrence.