CITY OF LITTLE ROCK, Arkansas, and its Board of
Directors, Jim Dailey, Dr. Hamp Roy, Jesse Mason, Jr.,
Jeff Sharp, Joan Adcock, John Lewellen and Sharon Priest *v.*
Eugene M. PFEIFER, III; Steven H. Scott; Carol Diane
Brown; James Moore Brown, Jr.; Robert Johnston; FCC Tract
A Partnership; FCC Tract D Partnership; Heights
Neighborhood Association; Mark Dane Hartness; James R.
Lynch; Weaver Leon Majors, III; Stewart B. McGehee; Evelyn
Thomas; Bart Tomerlin; and Leisure Arts

93-786                                        887 S.W.2d 296

Supreme Court of Arkansas
Opinion delivered November 14, 1994
[Rehearing denied December 19, 1994.*]

*Special Chief Justice Eugene T. Kelley and Special Justices Don A. Smith and
Comer Boyett, Jr., join. Holt, C.J., and Newbern and Glaze, JJ., not participating.

*Thomas M. Carpenter*, City Att'y, by: *Susan H. Oswalt, Cynthia Dawson*, and *Stephen R. Giles*, for appellants.

*Eichenbaum, Scott, Miller, Liles & Heister, P.A.*, by: *Christopher O. Parker*, for appellees.

COMER BOYETT, JR., Special Justice. This appeal challenges the Chancellor's finding that the Board of Directors of Little Rock, Arkansas was arbitrary, capricious and unreasonable in passing Municipal Ordinance No. 16337. This ordinance basically rezoned 17.7 acres of land on Highway 10 in Little Rock from R-2 to a Planned Commercial District and legislated that the National Home Center Project was a proper subject for a Planned Commercial Development.

All parties agreed there were no genuine issues of material facts and the case was submitted to the Chancellor on summary judgment motions which included pleadings, testimony by affidavit, deposition and other discovery methods and exhibits. The Chancellor voided the ordinance and permanently enjoined the City from issuing a building permit and the City has appealed.

The General Assembly provided cities with the power to adopt plans for property usage within its boundaries as set out in Ark. Code Ann. §§ 14-56-401 to -425 (1987 & Supp. 1993) which include the adoption and filing of a land use plan and zoning ordinances consisting of a map and text for the entire city which will carry out or protect the various elements of the plan.

Pursuant to the legislative authority granted it, the City of Little Rock did adopt a land use plan and zoning ordinances for the City including the Highway 10 area west of I-40 which includes the subject property. Included in the adoption of the zoning code of ordinances was a designation of Planned Unit Development, Municipal Code Section 36-451 *et seq.* Professor Robert Wright, author of *Zoning Law in Arkansas: A Comparative Analysis*, opined that:

> [t]he Planned Unit Development, or PUD, is authorized by ordinance in Little Rock . . . . As mentioned, the potential scope of a PUD is greater than that of a cluster development. Clustering still takes place in the sense that the population density within the area is intended to remain about the same as if setback and similar requirements were met. On the other hand, there is a greater mix of uses. The idea is that these varying uses will be blended so as to create an aesthetically pleasing, interrelating unit which is advantageous in terms of property values.

A Planned Commercial District or PCD is one of four kinds of Planned Unit Developments or PUDs.

In Municipal Code Section 36-452(3), the City stated the purpose and intent of the PCD planned commercial/mixed use district as follows:

> a. *Purpose and intent.* The PCD district is intended to accommodate shopping centers and commercial/office park developments, and mixed use developments com-

bining residential, commercial and office uses in a carefully planned configuration in such a manner as to protect and enhance the viability of each independent use. The legislative purpose, intent and application of commercial planned development are as follows:

1. To encourage the clustering of commercial and office activities within areas specifically designed to accommodate the uses and to discourage the proliferation of commercial uses along major thoroughfares and noncommercial areas.

2. To provide for the orderly development of commercial and office activities in order to minimize adverse impact on surrounding areas and on the general flow of traffic.

3. To encourage orderly and systematic commercial/office and mixed use development design providing for the rational placement of activities, vehicular and pedestrian circulation, access and egress, loading, landscaping and buffer strips.

4. To encourage commercial development which is consistent with the long-range comprehensive plan for the city.

5. To facilitate residential development in a multi-use configuration incorporating commercial and office uses.

6. To accommodate large-scale suburban developments combining commercial office and residential uses in a harmonious relationship.

Municipal Code Section 36-452(3)(b) lists as permitted uses in the PCD:

1. Retail commercial uses.

2. Public and institutional uses.

3. Office uses.

4. Light industrial uses, provided that gross area per use generally does not exceed five thousand (5,000) square

feet and that at least fifty (50) percent of the floor area is used for retail sales.

5. Substantial residential uses appropriate to the scope and character of the development.

Of course the City has the right to change usages and amend the plan. As an example, Municipal Ordinance No. 15765 passed October 17, 1989, introduced a design overlay district for the Highway 10 land use plan, i.e. this was supplemental to the land use plan and basically dealt with the concept of "protection of the scenic quality of the Highway", "substantial building set-backs", "extensive landscaping and uniform tree plantings", and other esoteric values; nor does a city have to create a zoning ordinance or a land use plan or adopt planned use districts or planned commercial districts, but once it has done so it must follow the ordinance until it is repealed or altered. *City of Fordyce* v. *Vaughn*, 300 Ark. 554, 560, 781 S.W.2d 6, 9-10 (1989); *Potocki* v. *City of Fort Smith*, 279 Ark. 19, 22, 648 S.W.2d 462, 464 (1983).

What the questionable ordinance does is rezone the tract in question from R-2 to a PCD and declare that the National Home Center constitutes a project within the concepts of a PCD. The City did not repeal or amend the concept of a PCD as set out in its ordinance, i.e. the definitional requirements of a PCD are left in place. The project must comply with the uses, intent and purposes of the ordinance which defines PCD.

The undisputed facts are that the 17.7 acre tract was zoned R-2. The project to be built on the tract is a large National Home Center which provides materials and supplies for construction. The store would be 1,100 feet long and would be used partially for wholesale operations to contractors and the remainder would be for retail operations. The main building would comprise 100,200 square feet of customer showroom, the contractor sales showroom would be 10,000 square feet, the warehouse would be 50,000 square feet; there would be 30,000 square feet of lawn and garden facilities and it would have vehicle maintenance facilities with a fuel station. The exterior of the building along Highway 10 frontage would be a concrete wall and the other three walls would be a textured steel. The height of all the buildings is 24

feet with a metal roof of 12 and 2 pitch. No existing landscaping or terrain could be used on the site. The 17.7 acre tract amounts to 270,000 square feet of land. The main building would be on a 10 foot fill and the finished floor elevation of the retail sales area facing Highway 10 would be some 15 feet above the curb line on Highway 10 making the building facade about 40 feet in height above that point. The project would not be screened by any proposed landscaping for 15-20 years. There would be only one ownership of the facility.

■      This case is unique in a couple of senses. First of all, the parties have agreed that there was no genuine issue as to any material fact. Normally on a summary judgment appeal the evidence is viewed most favorably for the party resisting the motion and any doubts and inferences resolved against the moving party. In a case where there is agreement by the parties that there is no genuine issue of any material fact that rule is inapplicable and we simply determine whether the appellees were entitled to judgment as a matter of law. *See Daniels* v. *Riley's Health & Fitness Centers*, 310 Ark. 756, 840 S.W.2d 177 (1992).

■      While Chancery cases are reviewed *de novo* on appeal, *Garot* v. *Hopkins & Coates*, 266 Ark. 243, 583 S.W.2d 54 (1979), the Chancellor in a zoning case is limited solely to whether or not the city acted arbitrarily, capriciously or unreasonably. The reason is that such zoning decisions of the city are legislative in nature and the courts have long ruled that judicial intrusion upon this legislative prerogative violates the constitutional requirement of separation of powers. *City of Little Rock* v. *Breeding*, 273 Ark. 437, 619 S.W.2d 664 (1981); *Wenderoth* v. *City of Fort Smith*, 251 Ark. 342, 472 S.W.2d 74 (1971).

■■      So the Chancellor's decision that the City acted arbitrarily, capriciously and unreasonably must be examined by this court for error, taking into consideration there is a presumption that the Board of Directors acted in a reasonable manner whether they either zoned or refused to zone property. *Breeding, supra.* Arbitrary has been defined as "decisive but unreasoned action," and capricious has been defined as "not guided by steady judgment or purpose." *W.C. McMinn Co., Inc.* v. *City of Little Rock*, 257 Ark. 442, 448, 516 S.W.2d 584, 587 (1974) (citing *City of North Little Rock* v. *Habrle*, 239 Ark. 1007, 395 S.W.2d 751 (1965)).

There was opinion evidence given as to whether or not under the facts this project was proper for a PCD. Various witnesses testified and perhaps the most impressive witness was Jim Lawson, an employee of the City in the Planning Commission office. Mr. Lawson who is very knowledgeable in the field of zoning and the effect of zoning ordinances testified by deposition that the National Home Center Project would not encourage the clustering of commercial and office activities within the area rezoned and that it would encourage a proliferation of strip commercial along Highway 10. In fact Mr. Lawson testified that he was concerned that if the National Home Center went in the area it would encourage a commercial development that was inconsistent with the Highway 10 land use plan, that it would discourage residential areas from being developed along Highway 10, and that it would lead toward a total strip commercial area and in fact cause a collapse of the entire Highway 10 plan intent. Several land owners in the immediate vicinity testified that they had no objections to the project being constructed and hoped their land would be rezoned also and other land owners in the vicinity gave evidence that they objected to the proposed project as being out of sync with the intent of the zoning and land use plan of the City.

There were four *uses* for a PCD three of which obviously are inapplicable to this case, i.e. (1) public institutional uses (2) office uses (3) industrial uses (gross area exceeds 5,000 square feet). This leaves only the retail commercial use. There was strong evidence that a portion of the project of the National Home Center's business would be wholesale rather than retail use.

Plaintiffs' evidence also addressed itself to whether the project was in keeping with the *purpose* and *intent* of a PCD. The PCD district is definitionally intended to accommodate shopping centers and commercial/office park development and other mixed use developments combining residential, commercial and office uses in a carefully planned configuration in such a manner as to protect and enhance the viability of each independent use. This is not a commercial/office park development; there are no mixed developments combining residential and commercial office uses and this is not a shopping center. At page 2292 of the Little Rock Code, a shopping center was defined as a group of unified commercial establishments built on a site which is planned, developed,

owned and managed as an operating unit related in its location, size and types of shops to the trade area that the unit serves. It is obvious that the Chancellor felt that this required multiple businesses and multiple ownerships in order to be a shopping center. The finding of the Chancellor under the agreed upon facts that the project did not meet the definitional requirement of a PCD is not clearly erroneous. Consequently, we cannot say the Chancellor erred in determining the appellees were entitled to judgment as a matter of law.

Appellees have cross-appealed claiming the right to an attorney fee under the 1993 Civil Rights Act passed by the General Assembly. We find no ruling by the lower court on this issue. In any event, the municipal ordinance was passed in January 1993 and the Civil Rights Act did not go into effect until August of 1993.

Affirmed on direct appeal; affirmed on cross-appeal.

SPECIAL CHIEF JUSTICE EUGENE T. KELLEY and SPECIAL ASSOCIATE JUSTICE DON A. SMITH concur.

HOLT, C.J., and NEWBERN and GLAZE, JJ., not participating.