Mr. Don Dunn, Chairman Board of Developmental Disabilities Services Arkansas Department of Human Services Donaghey Plaza North Post Office Box 1437 Little Rock, Arkansas 72203-1437
Dear Mr. Dunn:
This is in response to your request for an opinion on three questions relating to the use of certain land located near a facility operated by the Board of Developmental Disabilities Services (the "Board").
The property at issue is within the corporate limits of Caddo Valley, an incorporated town (the "Town"), and has been zoned for residential use. A corporation has commenced extracting gravel from the property pursuant to a contract with the land's owner. After initially requiring the gravel operation to cease, "the city" reversed itself and voted to permit the operation to continue. An application for the rezoning of the property to a classification that would permit continued gravel mining and the construction of a gravel processing plant is pending.
The Board's Arkadelphia Human Development Center (the "Center") is located across a highway from the land, but is not within the corporate limits of the Town. It is my understanding that the Board owns the land upon which the Center is situated. The Center's residents include school-age children, who receive instruction at the Center under an educational program regulated by the Department of Education. The Board and certain residents of the Town object to the gravel operation, both as it exists and as proposed to be expanded, and are opposed to the requested zoning change.
Your questions are:
 1. If the property is re-zoned commercial, does the DDS Board have standing to appeal the decision of the city?
 2. If the property is not re-zoned but [the contractor] continues to remove gravel, what actions can be taken if [the] operation poses a threat to the health and safety of the residents of the [Center]?
 3. Are there any requirements that commercial zoning be a certain distance away from a school?
With respect to your first question, it is my opinion that the Board likely will have standing to contest the rezoning in a judicial proceeding.[1] Although the Supreme Court of Arkansas has not provided guidance on the question of the standing of neighboring landowners to contest rezoning amendments, it appears likely that the court would apply the rule stated in other land use disputes, particularly those involving street closings. That rule states that a person has standing to challenge a municipal legislative action if he suffers "special and peculiar injury or damage, but this special injury or damage must be such as is not common to the public in general and not just a matter of general public inconvenience." Freeze v. Jones, 260 Ark. 193, 197, 539 S.W.2d 425 (1976) (ordinance closing street). See also City of Little Rock v. Linn,245 Ark. 260, 432 S.W.2d 455 (1968) (street closing); Wenderoth v. Baker,238 Ark. 464, 382 S.W.2d 578 (1964) (condemnation of nearby property for highway). No opinion in an Arkansas rezoning case indicates that a neighbor's standing was therein challenged, but the cases suggest that the court would apply the rule fairly liberally in rezoning cases, there being many such cases litigated to conclusion with owners of nearby (not just adjoining) properties, as well as neighborhood associations and other interested persons, as parties. See, e.g., City of Little Rock v.Pfeifer, 318 Ark. 679, 887 S.W.2d 296 (1994); Brooks v. City of Benton,308 Ark. 571, 826 S.W.2d 259 (1992); City of Fordyce v. Vaughn,300 Ark. 554, 781 S.W.2d 6 (1989); Covell v. Bailey, 296 Ark. 397,757 S.W.2d 543 (1988); Cline v. City of Clarksville,295 Ark. 53, 746 S.W.2d 56 (1988);Smith v. City of Little Rock, 279 Ark. 4, 648 S.W.2d 454 (1983); Potockiv. City of Fort Smith, 279 Ark. 19, 648 S.W.2d 462 (1983); Riddell v.City of Brinkley, 272 Ark. 84, 612 S.W.2d 116 (1981); Washington St.Property Owners Ass'n v. City of Camden, 263 Ark. 649, 566 S.W.2d 733
(1978).
While no case has raised the issue in Arkansas, the weight of authority from other states is to the effect that a person is not deprived of standing to challenge the rezoning of adjacent property merely because his own property is not within the zoning jurisdiction. See Annot., 69 A.L.R.3d 805 (1976) and cases cited therein; see also Town of Mesilla v.City of Las Cruces, 120 N.M. 69, 898 P.2d 121 (1995). I agree with the courts so holding that the existence of an invisible and somewhat arbitrary political dividing line in no way affects the nature or extent of damage suffered by an adjoining landowner who otherwise has standing, and therefore that actions by such persons should be permitted to proceed.
Because answering your second question would involve the giving of general legal advice, rather than a specific opinion, with respect to a set of facts of which I may not be fully apprised, I must decline to render any opinion. The Board may wish to seek the advice of its regular counsel.
With respect to your third question, it is my opinion that there is no requirement in state law that commercial zones be any particular distance from schools. The Board should examine the Town's zoning ordinance and other ordinance to determine if the Town has legislated in this area. If the mining operation involves blasting, the Board should also review Act 814 of 1995, the Arkansas Quarry and Open Pit Mine Blasting Control Act, A.C.A. §§ 20-27-1301 to -1317 (Supp. 1995), which contains, among other things, provisions regulating blasting near residences, schools, and public buildings.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh
[1] Rezoning, unlike the granting of a variance or conditional use permit, can occur only by enactment of an amendment to a zoning ordinance. "The board [of zoning adjustment] shall not permit, as a variance, any use in a zone that is not permitted under the ordinance." A.C.A. § 14-56-416(b)(2)(B)(i)(b). Because you refer to the proceeding as one for rezoning, and because it appears quite unlikely that any municipality's zoning ordinance would permit gravel mining in a residential zone under any conditions, I assume that what is sought is, in fact, an amendment of the Town's zoning ordinance. Rezoning, being a legislative act, is not, under our constitution, subject to de novo
review by the courts. City of Little Rock v. Pfeifer, 318 Ark. 679,887 S.W.2d 296 (1994); City of Little Rock v. Breeding, 273 Ark. 437,617 S.W.2d 664 (1981); Wenderoth v. City of Fort Smith, 251 Ark. 342,472 S.W.2d 74 (1971). Amendments of zoning ordinances are, however, subject to review by chancery courts and will be reversed if arbitrary, capricious, or unreasonable. Pfeifer, 318 Ark. 679; Breeding,273 Ark. 437; Wenderoth, 251 Ark. 342. Opinions of the Supreme Court of Arkansas have not always been clear about the procedural nature of such reviews. In some cases, the proceedings have been characterized as appeals to the chancery court. See, e.g., Potocki v. City of Fort Smith,279 Ark. 19, 648 S.W.2d 462
(1983); Riddell v. City of Brinkley, 272 Ark. 84,612 S.W.2d 116 (1981). Others were described as, and clearly were, original actions brought in chancery court, after the municipality's zoning decision, by neighbors and other interested parties. See, e.g., Brooksv. City of Benton, 308 Ark. 571, 826 S.W.2d 259 (1992); Covell v.Bailey, 296 Ark. 397, 757 S.W.2d 543 (1988). The latter characterization would seem to be more accurate and internally consistent. An "appeal," as that word is generally understood and used, can be taken only by a party to a judicial proceeding. Because a rezoning is a legislative process and act (i.e., the proceeding by which a municipality amends one of its ordinances), there are no "parties" to the proceeding as such. A person dissatisfied with an amendment to a zoning ordinance likely would be ill-advised, therefore, to characterize his challenge in chancery court solely as an appeal.