The Honorable Bobby L. Glover State Representative P.O. Box 1 Carlisle, AR 72024-0001
Dear Representative Glover:
This is in response to your request for an opinion regarding a proposed municipal ordinance. The ordinance in question would require all persons and entities within the City of Stuttgart to purchase water used on the premises from the Stuttgart Municipal Water Works, and would prohibit the drilling of any new water wells. You have asked whether this ordinance would be valid and enforceable.
RESPONSE
It is my opinion that if challenged, the validity of the ordinance would likely turn on whether it constitutes a lawful exercise of the city's police power. Because the resolution of this issue will turn largely on questions of fact, I cannot offer a conclusive opinion in the limited format an opinion. I lack the resources and the authority to act as a factfinder in resolving such matters. I will, however, outline what in my view will be the guiding legal framework for the factual review.
The proposed ordinance states in Section 1 that all persons and entities in possession of land within the City of Stuttgart:
 shall be required to purchase the water utilized on the premises from the Stuttgart Municipal Water Works and shall be required to connect their property to the Stuttgart Municipal Water Works' system and pay the rates and fees. . . .
Section 2 of the ordinance provides that:
 [i]t shall be unlawful for any person . . . or entity to drill a water well or any type of well for the purpose of extracting water, from any land within the Stuttgart, Arkansas city limits.[1]
The ordinance thus proposes to impose two requirements or limitations on the city's inhabitants — connection to the municipal waterworks and no new water wells.
It must be initially recognized when considering this proposed ordinance that while a city is clearly authorized to purchase or construct a waterworks system (see A.C.A. §§ 14-54-702 and 14-234-203, -204), the statutes make no provision for requiring that property owners connect to a municipal waterworks. Nor have I found any specific authority to this effect. Compare A.C.A. §§ 14-235-302 through -304 (authorizing a municipal board of health to order property owners to connect with a sewer line within 300 feet of their property). I also agree with the conclusion reached by a previous administration in this office that there is no authority for the proposition that a city can, as a general matter, dictate an exclusive service territory for its municipal system. See Op. Att'y Gen. 93-015.
Thus, with regard to that portion of the ordinance that would require property owners to connect to the Stuttgart Municipal Water Works, it is my opinion that any authority in this respect must derive from some other specific grant of authority from the state. This necessarily follows from the fact that cities have no inherent power to enact legislation, but rather their legislative authority is dependent upon the authority granted by the constitution and the General Assembly. City of Fordyce v.Vaughn, 300 Ark. 554, 781 S.W.2d 6 (1989).
One possible source of authority in this regard is the so-called "general welfare clause" which provides that:
 [m]unicipal corporations shall have power to make and publish bylaws and ordinances, not inconsistent with the laws of this state, which, as to them, shall seem necessary to provide for the safety, preserve the health, promote the prosperity, and improve the morals, orders, comfort, and convenience of such corporations and the inhabitants thereof.
A.C.A. § 14-55-102 (Repl. 1998).
Indeed, the proposed ordinance in this instance states that it is "immediately necessary and desirable for the protection and preservation of the health and welfare of the citizens of Stuttgart, Arkansas. . . ."See Section 6.
I have been provided no information regarding the specific background or basis for this ordinance, and in any event I am not well situated to make the necessary determination as to whether the welfare of the city demands that property owners connect to the municipal waterworks and purchase their water from the municipal system. The Arkansas Supreme Court has generally adhered to the view that cities have broad discretion to determine what is necessary for the public welfare, safety, comfort and convenience. See Sander v. Blytheville, 164 Ark. 434, 262 S.W.2d 23
(1924). The ordinance in this instance appears to predicate the requirement that property owners connect to the municipal system in part on the need to "insure the citizens of Stuttgart that the daily demands of the fire protection and water consumption are maintained." See Section 6 of proposed ordinance.[2] The reasonableness of the requirement will, however, ultimately depend upon all of the surrounding facts and circumstances.
Similarly, with regard to the prohibition against drilling new wells, I believe the question will focus on the existence of facts supporting the need for and the reasonableness of this regulation "to insure . . . that the daily demands of fire protection and water consumption are maintained[.]" Proposed Ordinance, Section 6.[3] It is well established that private property rights are subject to the legitimate exercise of the police power. See generally Yarbrough v. Ark. State Hwy. Comm'n,260 Ark. 161, 164, 539 S.W.2d 419 (1976) (noting that while Ark. Const. art. 2, § 22 protects individual property rights, "the individual's use and enjoyment of property is always subject to reasonable regulations in order to preserve the welfare of the public at large.") Regarding the reasonableness of such police regulations, it has been stated generally that there must be:
 a real and substantial or rational nexus . . . between a restraint and a valid exercise of the power. . . . The legislature may not, under the guise of the police power, arbitrarily interfere with private property, or impose unusual or unnecessary regulations on it.
16A C.J.S. Constitutional Law § 508 (1984).
As noted above, I have no specific information regarding the particular circumstances surrounding this proposed ordinance. The foregoing will hopefully be of assistance to those undertaking the necessary factual review in determining the ordinance's validity.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:EAW/cyh
[1] The ordinance exempts existing operating wells, unless ownership is transferred, and wells utilized exclusively for crop irrigation. See
Sections 1 and 2.
[2] Section 6 also states that the ordinance is necessary "to preserve the city's ability to meet current bond payments for funds secured to construct water and sewer facilities. . . ." It should be noted that in my opinion, this does not form a sufficient basis for the city's exercise of its police power. The Arkansas Supreme Court has stated that police regulations "must be reasonable, and must be directed solely to legitimate regulation of the subject-matter undertaken. They cannot bepassed, under the guise of police regulations, in order to raise revenue."Dreyfus v. Boone, 88 Ark. 353 (1908) (emphasis added).
[3] It is my opinion that the elimination of "potential contamination to existing water wells[,]" (see Section 6) in all likelihood does not, standing alone, form a sufficient basis for the regulation. The reasonableness of a prohibition against new wells on this basis would, I believe, be seriously in doubt given the alternative of regulating well construction. See A.C.A. § 17-50-107 (b) (part of the Arkansas Water Well Construction Act recognizing authority of municipalities to establish their own standards with respect to water well drilling or pump installation).