2011 Ark. App. 285

**Tammy McLAIN et al., Appellants**

v.

**CITY OF LITTLE ROCK PLANNING COMMISSION and Entergy Arkansas, Inc. Appellees.**

**No. CA 10–514.**

Court of Appeals of Arkansas.

April 20, 2011.

Rehearing Denied May 25, 2011.

Guy R. Satterfield, Laura E. Levine, Little Rock, for appellant.

Wm. Webster Darling, Amy Beckman Fields, Little Rock, for appellee.

JOSEPHINE LINKER HART, Judge.

Appellants[1] bring this appeal from the Pulaski County Circuit Court following a jury verdict and the court's entry of judg-

---

1. Tammy McLain, Faithann Glidden, Michael Glidden, Gary Brown, Diane Davis, Trudy Campbell, Roy Jolley, Carolyn Jolley, Sue Ann Stephens and Howard Stephens, individually and as Trustees of the Howard Grantland Stephens and Sue Ann Stephens Joint Revocable Trust Declaration.

ment notwithstanding the verdict. We reverse the circuit court's entry of JNOV and affirm in all other respects.

This dispute concerns a proposed electrical substation on farm land owned by the Minton Family on Colonel Glenn Road, outside the limits of the City of Little Rock but within its extraterritorial planning jurisdiction. Appellants are neighbors of the property. Appellee Entergy Arkansas, Inc., sought to purchase part of the property and construct an |₂electrical substation there because the nearest substation was at or near capacity. After considering five potential sites, it determined that the Mintons' property, over which existing electrical transmission lines run, was the best choice. The Mintons authorized Entergy to make two applications to appellee Little Rock Planning Commission on their behalf. Entergy applied for approval of a preliminary plat subdividing the property into three lots, seeking variances for the development of Lot 3 without public street frontage and an increased depth-to-width ratio for Lot 2. Entergy also applied for a conditional use permit (CUP) that would allow it to relocate the access road for Lot 3 from Colonel Glenn Road to Lawson Road. The planning commission approved the applications on the recommendation of the planning department staff. Appellants appealed the grant of the CUP to the Little Rock Board of Directors, which upheld the planning commission's decision. After appellants appealed the approval of the preliminary plat and the CUP to circuit court, Entergy intervened.

The circuit court granted partial summary judgment to the city on the issue of whether the Mintons had authorized Entergy to apply for the subdivision plat.² The case was tried de novo to a jury. Appellants moved for directed verdict against the city on the grounds that it had not followed its own procedures and that the planning commission lacked jurisdiction over matters within the city's extraterritorial jurisdiction. The trial court denied that motion. |₃At the conclusion of the trial, appellants' counsel again moved for directed verdict on the same grounds, and the trial court again denied the motion. The jury found in favor of appellees on the application for the CUP but ruled in favor of appellants in regard to the subdivision application and preliminary plat. Appellees then moved for JNOV on the ground that there was no substantial evidence to support the jury's verdict in favor of appellants.³ After the court granted the motion for JNOV, appellants pursued this appeal.

Appellants argue that the trial court erred in granting the motion for JNOV because there was substantial evidence to support the jury's finding that the commission's approval of the subdivision application and preliminary plat was unlawful. They also contend that the planning commission lacked jurisdiction to approve the applications because it is not the legislative body of the city, as contemplated within the applicable statutes. Although we reject appellants' challenge to the planning commission's jurisdiction, we agree with appellants that the jury's verdict was supported by substantial evidence.

2. Appellants cannot challenge Entergy's authority to file the application on behalf of the land owners because they failed to appeal from the partial summary judgment on that issue. See *Taylor v. George*, 92 Ark. App. 264, 212 S.W.3d 17 (2005); *Van Curen v. Arkansas Prof'l Bail Bondsman Licensing Bd.*, 79 Ark.

App. 43, 84 S.W.3d 47 (2002). Even if this issue had been preserved, Entergy submitted the necessary affidavits before the planning commission acted on the application.

3. The court denied appellees' motions for directed verdict on the subdivision issue.

A trial court may grant a motion for JNOV only if there is no substantial evidence to support the jury verdict and the moving party is entitled to judgment as a matter of law. *Talley v. City of North Little Rock*, 2009 Ark. 601, 381 S.W.3d 753. Substantial evidence is evidence of a sufficient force and character that it will compel a conclusion one way or another; it must force the mind beyond mere suspicion or conjecture. *Id.* On appeal, we review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the party against whom the JNOV was rendered. *Id.*

Substantial evidence that the city did not follow its own procedures in approving the subdivision application and preliminary plat was submitted in the testimony of the planning department's director, Tony Bozynski, and the checklist used by the department's staff in determining whether Entergy had submitted all of the necessary documents.[4] Bozynski, who testified about the commission's procedures, said that the department's staff routinely uses the checklist to ensure that all necessary documents, including a bill of assurance, have been submitted with a preliminary-plat application. This checklist indicated the documents required by various city ordinances and set forth the following boxes to be checked where applicable: "provided & acceptable," "provided but incomplete," "not provided," and "does not apply." In item number 36, this checklist stated that a draft bill of assurance was required by City Ordinance 31–93. That ordinance, which was provided to the jury, stated: "The draft submitted shall use the format provided within the sample draft provided by staff. This format will ensure that the proposed bill of assurance separates those provisions required in the plat by ordinance and those provisions desired by the developer." None of the boxes next to that item in the checklist were checked; instead, the number "36" was circled. According to the checklist, therefore, Entergy did not submit the required draft bill of assurance; in fact, it simply submitted the blank sample bill of assurance provided by the city, which did not set forth any "provisions desired by the developer," as required by the ordinance. Further, required items 10 (existing and proposed covenants), 14 (request for variances, waivers, or deferrals), 24 (limits of flood way and/or flood plain), 25 (storm drainage analysis), and 26 (preliminary storm drainage plan) were also not checked, but circled.

Bozynski testified that the draft bill of assurance submitted by Entergy satisfied ordinance 31–93 and that it is typical for an applicant to submit a blank form with an application for a preliminary plat and to submit a completed form with the final plat. Nevertheless, the record before us does not contain a completed form. It is apparent that the jury did not credit Bozynski's testimony on this issue and that it believed that this sample draft, which was nothing more than a blank form, did not amount to a proposed bill of assurance as contemplated by the ordinance. Accordingly, we reverse the trial court's entry of

---

4. We disagree with appellants' assertion that the city was required to strictly follow its own procedures. The trial court correctly instructed the jury that appellants had the burden of proving by a preponderance of the evidence that the city failed to substantially comply with its own ordinances. *See City of*

*Fordyce v. Vaughn*, 300 Ark. 554, 781 S.W.2d 6 (1989); *Mings v. City of Fort Smith*, 288 Ark. 42, 701 S.W.2d 705 (1986); *Taggart & Taggart Seed Co. v. City of Augusta*, 278 Ark. 570, 647 S.W.2d 458 (1983); *Rolling Pines Ltd. P'ship v. City of Little Rock*, 73 Ark. App. 97, 40 S.W.3d 828 (2001).

**436**

JNOV.[5]

■ Appellants also contend that the planning commission lacked jurisdiction to approve the applications and that the trial court erred in rejecting their proffered jury instruction on this issue. Appellants unsuccessfully offered the following instruction:

The territorial jurisdiction of the legislative body of the city having a planning commission shall be exclusive and shall include all land lying within five (5) miles of the corporate limits.

A planning commission is not a legislative body but functions in an administrative capacity and derives its authority from the legislature.

If you find that the Plaintiffs have proven, by a preponderance of the evidence, that the City of Little Rock Planning Commission did not have authority to approve an applicant's request for a preliminary plat or grant a conditional use permit on a lot, located outside the City of Little Rock's corporate limits, but within the extra territorial jurisdiction, the your [sic] verdict shall be for the Plaintiffs. If not so proven, then your verdict shall be for the City of Little Rock.

The extent of the planning commission's jurisdiction was a question of law for the trial court, not the jury, to decide. *See St. Louis, I.M. & S.R. Co. v. State*, 102 Ark. 205, 143 S.W. 913 (1912). The trial court did not, therefore, err in refusing to give this instruction.

■ Nevertheless, appellants contend that the trial court should have ruled that the planning commission lacked jurisdiction. They assert that, if property is located outside the city limits, the planning

commission has no authority to administer land-use regulations, and that only the city board of directors, the "legislative body," may do so, pursuant to Arkansas Code Annotated section 14–56–413 (Repl.1998). We disagree. We construe this statute, in the context of the entire municipal-planning subchapter, Arkansas Code Annotated sections 14–56–401 through 14–56–426 (Repl.1998 & Supp.2009), as permitting a city's board of directors to delegate to the planning commission the authority to regulate land use on property outside city limits but within the city's extraterritorial-planning jurisdiction.

Arkansas Code Annotated section 14–56–413(a)(1)(A) states, "The territorial jurisdiction of the legislative body of the city having a planning commission, for the purpose of this subchapter, shall be exclusive and shall include all land lying within five (5) miles of the corporate limits." Section 14–56–413(b)(1) gives the planning commission jurisdiction to act within the territorial jurisdiction of the city. It states that the planning commission "shall designate the area within the territorial jurisdiction for which it will prepare plans, ordinances, and regulations." Arkansas Code Annotated section 14–56–414 (Repl. 1998) provides that, after completing a planning-area map, the planning commission may prepare and adopt land use, community facilities, master street, and other plans significant to the health, safety, and general welfare of the city and its environs. Arkansas Code Annotated section 14–56–415 (Repl.1998) states that the planning commission will then transmit the plans to the city board for enactment, recommended ordinances, and regulations to carry out the plans. After the adoption of

---

**5.** In light of our holding on this issue, we need not address appellants' other arguments regarding the city's procedures.

a master street plan, the planning commission "may prepare and shall administer, after approval of the legislative body, regulations controlling the development of land," including the subdivision of land into lots, the provision of access to those lots, and the extension of utilities. Ark.Code Ann. § 14–56–417(a) (Supp.2009).

We review issues of statutory construction de novo, as it is for this court to determine what a statute means. *Johnson v. Dawson*, 2010 Ark. 308, 365 S.W.3d 913. The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Potter v. City of Tontitown*, 371 Ark. 200, 264 S.W.3d 473 (2007). We construe the statute so that no word is left void, superfluous, or insignificant; and meaning and effect are given to every word in the statute if possible. *Id.* When the language of the statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *Id.* When a statute is ambiguous, |8however, we must interpret it according to the legislative intent, and its review becomes an examination of the whole act. *Johnson, supra.* We must reconcile provisions to make them consistent, harmonious, and sensible in an effort to give effect to every part. *Id.* Although section 14–56–413 refers to "the legislative body of the city," we cannot say that the legislature intended to limit the city's extraterritorial jurisdiction in the manner urged by appellants. As a whole, the statutory scheme plainly demonstrates that the planning commission is authorized, as an advisory body to the board of directors, to approve preliminary plats within the city's extraterritorial jurisdiction. *See City of Jacksonville v. City of Sherwood*, 375 Ark. 107, 289 S.W.3d 90 (2008); *Mings v. City of Fort Smith*, 288 Ark. 42, 701 S.W.2d 705 (1986).

Affirmed in part; reversed in part.

ROBBINS and HOOFMAN, JJ., agree.