TRINITY UNIVERSAL INS. CO. v. STATE FARM MUTUAL
AUTO INS. CO., ET AL

5-4909                                     441 S.W. 2d 95

Opinion Delivered May 26, 1969

*Smith, Williams, Friday & Bowen* by *George Pike, Jr.* for appellant.

*Cockrill, Laser, McGehee, Sharp & Boswell* for appellee (State Farm).

*S. Hubert Mayes, Jr.* for appellee (Maryland Cas.).

CARLETON HARRIS, Chief Justice.    On November 22, 1964, appellant, Trinity Universal Insurance Company, had in force a family automobile liability policy issued to Marguerite G. McCoy, in which the company agreed

to pay on behalf of the insured all sums which Miss Mc-Coy should become legally obligated to pay as damages because of bodily injury arising out of the use of any automobile by the insured. The policy limits were $10,-000.00 for any person, and $20,000.00 for any occurrence. As to coverage of Miss McCoy with respect to a non-owned automobile, the policy provided that the Trinity coverage should apply only as excess insurance over any other insurance available to the insured. On November 22, 1964, there was a collision between an automobile driven by Miss McCoy, the car being owned by Ralph Overstreet, and another vehicle operated by one Gloria Jean King, the King vehicle having three passengers, Gale Montgomery, Paul Waldron, and Cheryl Brandt. It was the view of appellant that a proximate cause of the collision was the negligence of its insured in driving on the wrong side of the road, and failing to keep a proper lookout. The passengers in the King automobile received numerous injuries, and appellant company, after notifying State Farm Mutual Automobile Insurance Company (hereafter called "State Farm") and Maryland Casualty Company (hereafter called "Maryland") of the accident, and demanding that those companies admit coverage for the injuries sustained, settled the claims against Miss McCoy, when the appellee companies denied liability. The amount of settlement was $9,729.34. Thereafter, Trinity instituted suit against appellees in the Pulaski County Chancery Court, seeking judgment for that amount, together with interest, costs expended, and other proper relief. The two appellees filed separate demurrers, and also a motion to transfer the case to law, and, after amendments to appellant's complaint, and to the demurrers filed by appellees, the court found that the demurrers should be sustained; appellant's complaint, as amended, was dismissed. From the decree so entered, Trinity brings this appeal.

The sole question before us is whether the court erred in sustaining the demurrers. In its complaint, appellant alleges the facts upon which it bases the claim

against appellees. In addition to setting out its own coverage to Miss McCoy, appellant asserted that appellee, State Farm, at the time of the accident, had in force a family automobile liability policy issued to Chris Floyd, under which, *inter alia,* the company had agreed to pay all sums which its insured might become obligated to pay as damages because of bodily injuries sustained by any person arising out of the use of any non-owned automobile by any relative of the insured using said automobile with the permission of the owner, or arising out of the use of a non-owned automobile by any other person with respect to liability, because of acts or omissions of a relative of the insured.

It was further asserted that Maryland had in force a family automobile liability policy issued to Ralph Overstreet in which, *inter alia,* Maryland agreed to pay all sums which Overstreet should become legally obligated to pay as damages because of bodily injuries sustained by any person arising out of the ownership, maintenance or use of an automobile owned by Overstreet, or by any person operating the car with the permission of this insured.

The alleged facts which legally obligated the two appellee companies are as follows:

Miss McCoy was operating the vehicle owned by Overstreet (insured by Maryland), and in which Lee Floyd, son of Chris Floyd (insured by State Farm) was riding, Miss McCoy and Floyd being engaged in a joint venture for their mutual benefit, one of the objects being for Floyd to teach Miss McCoy how to drive the Overstreet vehicle. It was asserted that Floyd had the right to direct the manner of operation and course of the automobile. It is contended that this use of the Overstreet automobile by Marguerite McCoy and Lee Floyd[1] was

---

[1] Lee Floyd died two days later as a result of injuries received in this accident.

with the permission of Ralph Overstreet through the latter's son, Don Overstreet.

It is further asserted in the complaint that appellant notified appellee companies and made a demand that they admit coverage for the injuries sustained by the King passengers, and that appellees settle or defend the claims which those persons were making against Miss McCoy and the estate of Lee Floyd. As previously mentioned, both appellees denied coverage, and Trinity alleged that it then proceeded in good faith and "in the exercise of its best judgment" to settle these claims for the amount previously mentioned, Trinity obtaining releases for any claim which those persons might have against all three of the insurance companies, and their insureds. It is alleged that the settlements were most reasonable because of the liability of McCoy and Floyd, and the amount of damages sustained by claimants.

Both companies filed demurrers. The demurrer of State Farm (after being amended) set out four grounds, viz., (1) that appellant had not commenced its action within three years from the date of the collision, and was therefore barred by the statute of limitations, (2) that appellant was acting as a mere volunteer, being under no obligation to make any payment, (3) that, under the provisions of Ark. Stat. Ann. § 66-4001 (Repl. 1966) appellant could not properly bring a direct action against State Farm, and (4) that appellant has not exhausted its remedies against the estate of State Farm's alleged insured, Lee Floyd. Maryland also relies upon the first three to sustain its position. Motions were also filed by each appellee to transfer the case to the Circuit Court.

We find no merit in any of the grounds asserted in the demurrers. The action instituted by Trinity is based upon subrogation, but the relief sought is actually that of contribution, appellant contending at the least, that it paid more than its share of a common liability. As to the first ground, the statute of limitations had not

run for the reason that Trinity had no cause of action against anyone until it made its first settlement payment on May 11, 1965. In *Pennington* v. *Karcher*, 171 Ark. 828, 286 S.W. 969, this court said:

> "It was also expressly held in that case that the right of action for contribution accrues when one surety pays more than his share of the common liability. This is in accordance with the general rule, that a party acquires the right of contribution as soon as he pays more than his share, but not until then, and consequently the statute of limitations does not begin to run until then."

See also *Hazel* v. *Sharum*, 182 Ark. 557, 32 S.W. 2d 315.

Nor can we agree that appellant was a mere volunteer in settling the claims with the occupants of the King automobile. A volunteer is one, who, without interest to protect, or without a legal or moral obligation to pay, satisfies the debt of another. It is not necessary that we discuss whether the taking of the subrogation agreement removed appellant from this category, for it is very obvious, under the pleadings, that Trinity had an interest to protect.[2] Appellees argue that, as a prerequisite to enforcing contribution among insurers, it is essential that the same risks have been insured, and it is pointed

---

[2] In **Mosher v. Conway,** 46 P. (2d) 110, the Arizona Supreme Court said:

"* * * It is true, of course, that a mere volunteer, who has no rights to protect, may not claim the right of subrogation, for one who, having no interest to protect, without any legal or moral obligation to pay, and without an agreement for subrogation or an assignment of the debt pays the debt of another, is not entitled to subrogation, the payment in his case absolutely extinguishing the debt. But when one, to protect his own interest, pays a debt which he honestly believes must be paid to accomplish that purpose, we think, by the fundamental principles of equity, he cannot be held to be a mere volunteer, even though it may afterwards appear the payment was unnecessary."

out that Trinity, in its complaint, asserted that it only had excess coverage over that of Maryland and State Farm, rather than a primary obligation to third parties. Appellees overlook the fact that appellant's averment in its complaint provided "with respect to a non-owned automobile that the coverage shall apply only as excess insurance *over any other insurance available to the insured.*"[3]    The question of whether Miss McCoy was covered under policies issued by State Farm and Maryland is very much in controversy, and, should it develop that their policies do not afford coverage, appellant will have primary liability, Miss McCoy being appellant's insured.    It is thus apparent that Trinity had a very real interest in settling these claims.    After all, if appellant held a *bona fide* view that appellee companies held the primary coverage, but knew that those companies would contest liability, what other steps could have been taken by appellant to protect its interest?    According to the allegations in the complaint, it notified State Farm and Maryland, and sought their cooperation.    They refused to have any part in any negotiations with claimants. Trinity asserted that, under the circumstances of the collision, it made a "very reasonable" settlement.    Bear in mind that, in testing the sufficiency of a demurrer, well pleaded allegations of the complaint are taken to be true.    *Howell* v. *Ark. Power and Light Co.,* 225 Ark. 535, 283 S.W. 2d 680.

As to Points 3 and 4, we agree that, if Trinity were endeavoring to stand in the position of Marguerite McCoy for the purpose of enforcing a right of contribution against Lee Floyd (estate) the argument by appellees would be correct, for this would be a direct action against (according to the allegations of the complaint) one of State Farm's insured, and would be a violation of Ark. Stat. Ann. § 66-4001 (Repl. 1966).[4]    But Trinity is not

---

[3]Emphasis supplied.

[4]This statute provides that a judgment must first be rendered against the insured, and remain unsatisfied for a period of 30 days before suit can be instituted against the insurer.

seeking to enforce any right of contribution which its named insured, Marguerite McCoy, might have had against Lee Floyd as a joint tortfeasor; rather, it is seeking to enforce the alleged right which Marguerite McCoy had as an insured of State Farm and Maryland. To simplify the matter, let us suppose that Miss McCoy had no insurance with Trinity, and was not carrying insurance of her own at the time of the collision. Following the accident, she advises State Farm that she believes she has coverage under the policy issued to Chris Floyd, because she and the son were engaged in a joint venture, and he was instructing her how to drive at the time of the accident; she further informs Maryland that she believes she has coverage under the policy issued to Ralph Overstreet, because she was driving Overstreet's automobile with the permission of his son, Don Overstreet. Both State Farm and Maryland deny coverage, and inform Miss McCoy that they will not defend the litigation. She has an opportunity to settle with claimants for a reasonable sum, and feels that she cannot afford to hold such an opportunity in abeyance until after testing her rights against State Farm and Maryland. Accordingly, she settles with claimants from her own funds. Would any one then dispute her right to bring suit against the two insurance companies in a direct action as a matter of establishing her contention? That is exactly the situation before us in this litigation, except that Trinity, in making settlement for Miss McCoy, was subrogated to her rights against appellee companies.

Appellees expend considerable time in their briefs with the contention that this action should have been brought in the Circuit Court. As previously mentioned, a motion to transfer the cause to that court was filed by both appellee companies. However, the question of whether the case should have been transferred to law is not before us in this litigation. The court made no ruling whatsoever on this motion; the only ruling made was that the demurrers should be sustained. If appellees thought that the case should be transferred to Circuit

Court, they should have insisted that the court pass upon the motions. In *Higginbotham* v. *Harper*, 206 Ark. 210, 174 S.W. 2d 668, this court said:

> "But assuming that appellee had a complete and adequate remedy at law and should have proceeded there, his failure to do so was not ground for dismissing the complaint as prayed in the demurrer. Section 1243, Pope's Digest.[5] There was no motion to transfer to law, and the error, if error as to forum, was waived."

See also *The Church of God in Christ* v. *The Bank of Malvern*, 212 Ark. 971, 208 S.W. 2d 770.

Here, a motion was made to transfer to law, but was never acted upon; instead, the court sustained the demurrers and dismissed the complaint, which was error.

For the reasons heretofore set out, the decree is reversed, and the cause is remanded to the Pulaski County Chancery Court (Second Division) for further proceedings not inconsistent with this opinion.

---

[5] Ark. Stat. Ann. § 27-208 (Repl. 1962) is identical to this section