WILLIAM V. RICHARDS AND THE CITY OF LITTLE ROCK *v.* CLAUDE W. FERGUSON ET AL

5-5878                                  479 S.W. 2d 852

Opinion delivered May 8, 1972

*Lester & Shults, Joseph C. Kemp* and *Perry V. Whitmore,* for appellants.

*Wilbur C. Bentley* and *Hugh L. Brown,* for appellees.

GEORGE ROSE SMITH, Justice. This is a suit brought by the appellees, a group of neighboring homeowners in Little Rock, attacking an ordinance that rezoned two contiguous tracts in the city. The chancellor set aside the ordinance, holding it to be arbitrary and capricious. Inasmuch as the plaintiffs' right to relief clearly appears to be barred by the doctrine of laches, we find it unnecessary to discuss the facts bearing upon the validity of the ordiance.

The two tracts, one comprising two acres and the other half an acre, were formerly owned by the Arkansas Episcopal Diocese. The tracts were then zoned for one-family residential use. The Diocese decided to sell the property. Richards, the principal appellant, contracted to buy the property, on condition that the larger tract be rezoned for apartment use and the smaller tract for quiet-business use. To that end Richards acted for the Diocese in seeking a reclassification of the property.

The municipal planning commission recommended that the application for rezoning be denied, on the ground that its approval would constitute spot zoning. The applicants took an appeal to the city's legislative body—the Board of Directors—before whom the applicants contended that the two tracts could not as a practical matter be used as sites for single-family residences, principally because of the proximity of Interstate Highway 30 to the south. Neighboring landowners formed an association to combat the application and appeared at the Board of Directors meeting, where they contested the petition. Despite that opposition the Directors, on November 3, 1969, adopted an ordinance rezoning the tracts.

Richards waited about eight months, during which no suit was instituted by the protestants, before he completed his purchase from the Diocese. He testified that he paid $32,500 for the property, which at the time of trial he considered to be worth $16,000 to $18,000 for one-family residential use and $60,000 for apartment and quiet-business use. Thereafter he incurred substantial additional expense with respect to topographical surveys, engineering studies, development plans, and architectu-

ral designs. Finally ready to proceed with construction, he applied for a building permit in July, 1971. About a week later the landowners filed this suit, attacking the validity of the ordinance that had been passed some twenty months earlier.

The governing principles of law are not open to doubt. A suit such as this one seeks an equitable remedy and is subject to those defenses, including laches, that are commonly available in such proceedings. Anderson, American Law of Zoning, § 23.15 (1st ed., 1968). The doctrine of laches is ordinarily applied to situations in which the complainant has stood idly by while the other party has materially changed his position. In *Hamilton* v. *Smith*, 212 Ark. 893, 208 S.W. 2d 425 (1948), the plaintiff, who claimed an easement, delayed filing suit for an injunction until the defendant had spent about $2,000 toward the construction of a house that assertedly encroached upon the easement. In denying the plaintiff's claim to affirmative relief we pointed out that "equity will lend its aid only to those who are vigilant in asserting their rights. *Sims* v. *Petree*, 206 Ark. 1023, 178 S.W. 2d 1016. This principle is especially applicable where, as here, the suitor has sought to invoke a drastic remedy such an injunction, and it has often been held to bar one who waits until another party has expended a considerable sum. . .before asking an injunction against the completion and maintenance of such a structure."

The principles announced in that opinion, and in many others to the same effect, are controlling here. The protesting homeowners had notice of the application for rezoning and in fact actively opposed it, without success. Upon the passage of the ordinance reclassifying the property the next move was up to the protestants, for the Diocese and Richards could not seek redress in the courts with respect to an ordinance giving them all the relief they sought. Nevertheless, Richards waited eight months before completing his purchase. He then paid, according to his testimony as an experienced real estate dealer, at least $14,000 more than the property was worth as originally classified. Still the protestants took no action. Richards then expended additional sums in going ahead

with his plans to develop the property. At last, when Richards had reached the final step of applying for a building permit, the protestants took affirmative action to invalidate the ordinance that had been passed twenty months earlier. No excuse for their protracted delay is offered. In the circumstances a court of equity must hold that they have slept upon their rights for such an unreasonable length of time that they are precluded from obtaining affirmative relief.

Reversed and dismissed.