SUMMIT MALL COMPANY, LLC; City of Little Rock, Arkansas, and Its Mayor and Board of Directors: Jim Dailey; Johnnie Pugh; Willie Hinton; Larry Lichty; Michael Keck; Genevieve Stewart; Dean Kumpuris; Barbara Graves; Joan Adcock; Brenda Wyrick; and Brad Cazort *v.* Russell LEMOND; Carolyn Palmer; Barry Vuletich; Essie Brannon; Hattie Daniels; William F. Hyatt; Wendy Ramsey; Hall Ramsey; Erma Bayley; Ronald Turner; Randall Hughes; James Jones; Joe Butler; Mildred Merritt; Deloris Brands; Alfred Cook, Jr.; Martha Cook; Alice Burke; Karen Roberts; Kenneth Roberts; Olene Brown; and Larry Reynolds

02-1337                                          132 S.W.3d 725

Supreme Court of Arkansas
Opinion delivered December 4, 2003

*Williams & Anderson LLP*, by: *Philip S. Anderson, Jess Askew III, Kelly S. Terry,* and *Sarah M. Priebe,* for appellant Summit Mall Company, LLC.

*Thomas M. Carpenter* and *William C. Mann, III,* for appellants City of Little Rock *et al.*

*Wilson, Engstrom, Corum & Coulter,* by: *Gary D. Corum* and *Nate Coulter;* and *Morton Gitelman,* for appellees.

ROBERT L. BROWN, Justice. Appellants, Summit Mall, LLC, the City of Little Rock (the City), and the Mayor and Board of Directors of Little Rock (the Board), appeal from the Pulaski County Circuit Court's final decree and permanent injunction enjoining the City from issuing a building permit to Summit Mall or taking any other action with respect to City Ordinance No. 18,456.[1] The appellees, Russell Lemond and the other landowners (landowners), live in some proximity to the proposed Summit Mall site. They filed suit and were successful in obtaining the injunction to block the mall's construction.

Summit Mall raises five points on appeal: (1) that the circuit court lacked subject-matter jurisdiction, because Ordinance No. 18,456 should have been challenged under Ark. Code Ann. § 14-56-425 (Repl. 1998); (2) that as a matter of law, the landowners did not have standing to file the complaint below; (3) that the circuit court erred in holding Ordinance No. 18,456 void; (4) that the circuit court erred in rejecting its defenses of laches and statute of limitations; and (5) that the circuit court erred in ruling that Ordinance No. 18,456 was subject to referendum under Amendment 7 of the Arkansas Constitution. The City jointly asserts each point of appeal with the exception that the City believes the landowners had standing to bring their complaint. We agree with Summit Mall and the City that the circuit court erred in not concluding that the landowners' lawsuit was barred by laches. Accordingly, we reverse the final decree and injunction and remand the case.

The pertinent facts are undisputed for the most part. On December 1, 1987, the City's Board passed Ordinance No. 15,385, which approved a planned unit development and established a planned commercial district (PCD) for the property now referred to as the Summit Mall property. At that time, submission of the final development plan or a request for extension of time had to occur within one year of the preliminary approval. On October 3, 1988, an attorney for the then-developer of the Summit Mall

---

[1] The underlying suit was filed in Pulaski County Chancery Court. However, during its course, Amendment 80 of the Arkansas Constitution went into effect, which merged the courts of law and equity. Hence, we will refer to the trial court as the circuit court.

property, Ronald Mastriana, wrote David Jones of the City's Planning Department and requested an extension of time to file the final plan. Whether he asked for a one-year extension or a three-year extension and from what starting point that extension was to begin are matters of dispute in this case. On November 1, 1988, the Board passed Ordinance No. 15,571, which amended the time period from one year to three years in which PCD developers, including the Summit Mall developer, had to submit a final plan or a request for extension of time to do so.

On January 8, 1991, Patrick McGetrick, writing on behalf of the then-developer of the Summit Mall property, submitted a letter to Jim Lawson, Director of the City's Department of Planning and Development, and requested a three-year extension in which to submit a final plan. On February 12, 1991, that extension was approved by the City's Planning Commission. A second three-year extension was requested by Mr. McGetrick on October 25, 1993, and on January 4, 1994, that extension was also approved by the City's Planning Commission. On February 22, 1995, Summit Mall purchased approximately 97 acres in west Little Rock for the proposed mall from the prior developer.

The City Planning Commission denied Summit Mall another extension of time to file its final plan, but on March 18, 1997, the City Board passed Ordinance No. 17,423, which permitted a three-year extension to Summit Mall in which to file the final plan for the mall. Almost two-and-one-half years later, in a letter dated November 15, 1999, Summit Mall submitted the final plan for review and stated that it was "a revision for an earlier approved similar project." After several deferrals in considering Summit Mall's PCD, the City's Planning Commission voted to approve Summit Mall's PCD revision on September 14, 2000. After three readings of the proposed ordinance granting the requested revision, including new special conditions, and public comment both for and against the request, the Board passed Ordinance No. 18,456 on April 3, 2001.

On May 2, 2001, the appellee landowners from west Little Rock filed their complaint against the City and challenged the Board's approval of Ordinance No. 18,456. Their complaint stated that the site plan for the proposed development approved preliminarily in 1987 by Ordinance No. 15,385 "included a 975,000 square foot shopping mall, three office buildings totaling 335,000 square feet, a hotel with 190,000 square feet, and two restaurant parcels totaling 20,000 square feet." The ordinance reclassified the

zoning for ninety-seven acres of property adjacent to Interstate 430 and Shackleford Road in west Little Rock from office/residential to a PCD. The landowners sought an injunction prohibiting the City from issuing any building permits or taking any other action to implement the ordinance. They further sought a declaration that the Board's April 3, 2001 decision passing Ordinance No. 18,456 to establish a revised planned commercial district was arbitrary, capricious, unreasonable, and an abuse of discretion, and that the Board's approval of Summit Mall constituted "spot zoning" which was not in conformity with the City's applicable ordinances, Arkansas case law, or federal and state constitutional guarantees.

The City answered, generally denied the landowners' allegations, and pled the affirmative defenses of failure to state facts upon which relief could be granted under Ark. R. Civ. P. 12(b)(6), laches, waiver, and estoppel. The City further asserted that the landowners were required to proceed under § 14-56-425 and, thus, the chancery court was without subject-matter jurisdiction. The City added that an ordinance like the one at issue is not a proper subject for referendum under Amendment 7 of the Arkansas Constitution.

On June 4, 2001, Summit Mall moved to intervene. The circuit court granted Summit Mall's intervention in the case. That same day, Summit Mall moved to dismiss the complaint for lack of subject-matter jurisdiction on the basis that the chancery court (now circuit court) had no jurisdiction over claims for which there is an adequate remedy at law under § 14-56-425. Summit Mall also answered the complaint and cross-claimed against the City. It too asserted the defenses of lack of subject-matter jurisdiction, laches, estoppel, waiver, and statute of limitations. Summit Mall further contended that prior to its purchase of the 97-acre tract in 1995, the City represented to it that the property was zoned as a PCD and that the intended development of the property was permissible under this zoning. Summit Mall asserted that it had relied on these representations in purchasing the property and prayed that the circuit court enter a declaratory judgment declaring that its right to develop the property as a regional shopping mall was an interest protected by the due process and takings clauses of the United States and Arkansas Constitutions.

The City next filed a counterclaim against the landowners and acknowledged that sufficient referendum petitions regarding Ordinance No. 18,456 had been filed. The City requested a declaratory judgment that the zoning issue was administrative and not subject to a referendum under Amendment 7 of the Arkansas Constitution. The landowners answered and asked for a declaration that the signatures on the referendum petitions were valid. They further prayed that the circuit court order the City to hold a referendum election.

On August 29, 2001, the circuit court issued a letter opinion, followed by entry of an order, in which it denied Summit Mall's motion to dismiss for lack of subject-matter jurisdiction. Summit Mall next moved for summary judgment based on the landowners' lack of standing. Summit Mall also moved for summary judgment on the merits of the landowners' claims and filed a separate summary-judgment motion on the referendum question. The landowners later cross-motioned for summary judgment.

On February 12, 2002, the circuit court entered an order which granted the City's motion to dismiss Summit Mall's cross-claim against it; granted several of the landowners' motions for non-suit and dismissed those claims without prejudice; denied Summit Mall's summary-judgment motions on the issues of standing, the merits, and the referendum question; and denied the landowners' cross-motion for summary judgment on the merits and on the referendum.

Prior to trial, the parties agreed to a stipulation of facts. This was followed by a three-day trial. On June 5, 2002, the circuit court issued a letter opinion, which read in part:

> The City and Summit have raised equitable arguments of laches and estoppel against the Plaintiffs. Neither laches nor estoppel is applicable in this case. No amount of time would make the invalid ordinances passed since the expiration of Ordinance No. 15,385 valid. Neither the City nor Summit have relied on any actions or inactions of the Plaintiffs. The City and Summit have not changed their positions to their detriment in reliance on action or inaction of the Plaintiffs. Plaintiffs have not sat silent while the City and Summit acted. Plaintiffs have voiced objections to this mall project and opposed the ordinance that attempted to amend the original Summit Mall Ordinance. Summit can show no harm or detriment as a result of anything any of these Plaintiffs said or did. All citizens

and residents of the City of Little Rock have an expectation and a right that the City will properly follow and enforce its code and zoning ordinances. Just because the City failed to do what it should have done is not a basis for this court to reward the City's improper conduct. It would be inherently unfair to apply either of these equitable defenses in this case.

The action of the Little Rock City Board of Directors in enacting Ordinance No. 18,456 on April 3, 2001, was not in conformity with [the] City's prior ordinances. The City of Little Rock is hereby permanently enjoined and restrained from issuing any building permit to Intervenors or taking any other action pursuant to Ordinance No. 18,456 regarding the property in question.

. . . .

The final issue to be addressed by this court is now moot in light of the court's ruling on Count I, but the court feels compelled to address it anyway. The final question is whether the modification and amendment of a previously approved ordinance to create the Summit Mall PCD is an administrative or legislative action. If it is legislative, the action is subject to the referendum provisions of Amendment 7 of the Arkansas Constitution. If the action is administrative in nature, it is not subject to Amendment 7. This court has previously ruled that the passage of Ordinance No. 18,456 on April 3, 2001, was a legislative action and therefore subject to the provisions of Amendment 7. That is still the opinion of this court today.

This Ordinance No. 18,456 was not a minor revision of the Original Summit Mall Ordinance, but a major, wholesale revision of the original plan. . . . The evidence in this case reflects that the City's actions were more than merely administrative in nature, they were clearly legislative in nature.

On July 9, 2002, the circuit court issued a second letter opinion expanding on its reason for issuing the injunction and ruled on Summit Mall's statute-of-limitations argument:

The court has previously ruled that Ordinance No. 15,385 expired on December 1, 1990, due to no timely extension request being made by the developer. Mr. McGetrick's request for extension of January 8, 1991, was not timely. All subsequent ordinances

granting additional time extensions, as well as Ordinance No. 18,456 are invalid. No amount of time will make the subsequent ordinances enacted by the City valid.

The Plaintiffs filed a timely lawsuit challenging Ordinance No. 18,456 which purported to amend Ordinance No. 15,385. In the years following the expiration of Ordinance No. 15,385, the City violated its own ordinances by granting time extensions to Summit when it had no authority to do so. The statute of limitations defense raised by Intervenors is not applicable to this lawsuit.

On July 17, 2002, the circuit court entered its final decree and permanent injunction in which it set aside Ordinance No. 18,456 and enjoined the city from issuing a building permit to Summit Mall.

## I. Subject-Matter Jurisdiction

Summit Mall first argues that under this court's decision in *Camden Cmty. Dev. Corp. v. Sutton*, 339 Ark. 368, 5 S.W.3d 439 (1999), a city council's rezoning decision is an administrative action. Summit Mall further claims that Ordinance No. 18,456, was an administrative action under the rationale we employed in *Camden*, not a ·legislative action, and, thus, should have been challenged under the process set out in § 14-56-425 for challenging administrative acts. Summit Mall contends that even after the adoption of Amendment 80 to the Arkansas Constitution, which merged courts of law and equity, the landowners' complaint was barred, because it was not filed in the circuit court within thirty days of the challenged action. Summit Mall concludes that the trial court should have dismissed .the complaint for lack of subject-matter jurisdiction.

The City agrees with Summit Mall that in *Camden*, we held that zoning decisions are to be reviewed as administrative actions and that § 14-56-425 mandates an appeal to circuit court as a matter of law. Thus, according to the City, an adequate remedy at law existed, and a court of equity had no subject-matter jurisdiction in the instant case. The City further contends that because there are permits and other matters to be obtained before final plan approval, the landowners' appeal was premature. The landowners respond that this court has long held that rezoning is a legislative action and that Summit Mall's and the City's jurisdictional challenge is based upon a flawed reading of *Camden*.

We agree with the landowners. In *Camden*, the appellant had sought rezoning of its property from the Camden Planning Commission when a comprehensive zoning plan was already in effect. The Planning Commission recommended the appellant's proposal to Camden's City Board, but the Board declined to approve the proposed rezoning. The appellant subsequently sought to have the matter certified and placed on the ballot for a vote of the people at the November 1998 general election. The appellees, who were members of the community opposed to the proposed rezoning, sought to remove the initiative from the ballot. The circuit court ruled that issues concerning whether to rezone are administrative decisions not subject to the initiative process. On appeal, this court examined whether the action taken by the Planning Commission and City Board were legislative or administrative actions, since an initiative action may only be used to address legislative actions when a comprehensive zoning plan was already in effect. We held:

> . . . Specifically, we have determined that *the facts of this case* do not reflect the occurrence of any legislative action by the City Board. First, we note that the Commission, which receives its power from the City Board and functions solely as an administrative body without the power to pass legislation, was acting within its administrative authority when it recommended the rezoning proposal to the City Board. Next, we note that the City Board's decision to not accept the Commission's administrative proposal was only a rejection of proposed administrative action and did not constitute any legislative action or administrative action by the City Board. . . .

339 Ark. at 373, 5 S.W.3d at 442 (emphasis added). Moreover, we observed that the amendment of such a plan as was in place, such as the zoning sought by the appellant, would require the city to comply with certain statutory requirements. *See* Ark. Code Ann. §§ 14-56-423 — 424 (Repl. 1998). This court affirmed the circuit court's holding that because neither the Planning Commission nor the City Board took legislative action with respect to the existing comprehensive zoning plan, the decision of the Board not to rezone was not subject to an initiated petition under Amendment 7.

The *Camden* case is clearly distinguishable from the facts of the instant case. In *Camden*, no action was taken by the City Board. Because the City Board failed to pass any ordinance, it obviously did not act legislatively. As this court said in the *Camden* opinion,

the City Board merely rejected a proposed action of the Planning Commission. The same cannot be said for the events that took place in the case before us.

Here, by enacting Ordinance No. 18,456 in 2001, the Board not only approved the recommended action of the Planning Commission and amended Ordinance No. 15,385 to modify the PCD, but it rezoned the subject property and added new, special conditions to accommodate the rezoning. By enacting the ordinance, the Board took legislative action, which is a power delegated to it by the General Assembly under Ark. Code Ann. § 14-56-402 (Repl. 1998) ("Cities of the first and second class and incorporated towns shall have the power to adopt and enforce plans for the coordinated, adjusted, and harmonious development of the municipality and its environs."). *See also* Ark. Code Ann. § 14-56-416(a)(1) (Repl. 1998) ("Following adoption and filing of the land use plan, the [planning] commission may prepare for submission to the *legislative* body a recommended zoning ordinance for the entire area of the municipality." (Emphasis added.)).

This court has routinely held that when a municipality acts in a legislative capacity, it exercises a power conferred upon it by the General Assembly. *See City of Lowell v. M & N Mobile Home Park, Inc.*, 323 Ark. 332, 916 S.W.2d 95 (1996). As a consequence, a legislative act of a municipality equates to an act by the General Assembly. *See id.* We have further stated that the test for determining whether a resolution or ordinance of a municipality is legislation is whether the proposition is one that makes new law or, rather, executes a law already in existence. *See Gregg v. Hartwick*, 292 Ark. 528, 731 S.W.2d 766 (1987); *Greenlee v. Munn*, 262 Ark. 663, 559 S.W.2d 928 (1978).

In the instant case, the Board's action in enacting Ordinance No. 18,456 was clearly legislative. Not only did it revise the 1987 ordinance and the preliminary approval of the PCD, but it added new, special conditions respecting lighting, curbs, sidewalks, a perimeter ring around the site, security fencing around Camp Aldersgate, a widening of Shackleford Road, and other actions to improve the infrastructure of the impacted area. This was not merely zoning in conformity with a previously adopted land-use development plan, but a comprehensive zoning effort which included numerous new requirements with future ramifications. *See Buckeye Cmty. Hope Found. v. City of Cuyahoga*

*Falls,* 82 Ohio St. 3d 539, 697 N.E.2d 181 (1998). Accordingly, because the action was not administrative, the landowners were not required to proceed under § 14-56-425. We hold that the circuit court, sitting as a court of equity, had subject-matter jurisdiction.

## *II. Standing*

Summit Mall next argues that, as a matter of law, the landowners did not have standing, because they only presented evidence of general injuries and inconveniences shared by the general public rather than injuries peculiar to themselves. Summit Mall contends that the landowners' only assertions of injury relate to increases in traffic, loss of greenery, and possible loss of value to their land. It maintains, in essence, that the landowners lack any personal stake in the outcome of the lawsuit.

We repeat that the City does not join Summit Mall in arguing this point. The City agrees that the landowners had standing to file suit due to the fact that this case deals with the City's largest single commercial development which has the po-tential to affect the entire west Little Rock area.

Again, we conclude that Summit Mall's argument is misplaced and is based on a flawed reading of our case law. For its authority on standing, Summit Mall relies on cases which deal with vacating or closing city streets. It is true that in challenges to that type of city action, this court has held that a plaintiff must have sustained a special and peculiar injury or damage. *See, e.g., Freeze v. Jones,* 260 Ark. 193, 197, 539 S.W.2d 425, 428 (1976) ("Relief is available to those who suffer special and peculiar injury or damage, but this special injury or damage must be such as is not common to the public in general and not just a matter of general public inconvenience."); *City of Little Rock v. Linn,* 245 Ark. 260, 274, 432 S.W.2d 455, 464 (1968) ("It has long been recognized, however, that relief against the closing of a public way may be given to those who suffer special and peculiar injury distinct from that of the public in general. . . . [The injury] must be one which is different in character and not degree from that which every citizen suffers, whose business or pleasure causes him to travel the way."). Despite this line of cases, this court has never extended this standing test to individuals who challenge ordinary zoning or rezoning ordinances.

A case in point is *Mings v. City of Fort Smith*, 288 Ark. 42, 701 S.W.2d 705 (1986). In *Mings*, a landowner (Dr. Mings) challenged the Fort Smith Board of Directors' grant of permission to St. Edward Mercy Medical Center to use its parking lot which was constructed in a buffer zone next to Dr. Mings's vacant lot. The City's planning commission had denied the hospital's request to reopen the parking lot. In determining whether the appeal was brought before the Board by an "interested party" under the City's zoning ordinance, which provided for appeals on zoning matters, the court noted that it was brought by Mr. Faulkner, a property owner who owned property in the neighborhood "some six blocks away and who had appeared before the planning commission and spoken in favor of allowing the parking lot to be used." 288 Ark. at 47, 701 S.W.2d at 707. This court said:

> . . . It should be realized in our time, however, that we are not dealing with the typical adversary proceeding, and our role should be to defer whenever possible to the legislative function of the city board in zoning disputes. *See* M. Gitelman, *Judicial Review of Zoning in Arkansas*, 23 Ark. L. Rev. 22 (1969).

> That same deference should be given with respect to the question of standing. Again, we should recognize we are not dealing with a typical adversary proceeding. *See* J. Ayer, *The Primitive Law of Standing in Land Use Disputes: Some Notes from a Dark Continent*, 55 Iowa L. Rev. 344 (1969). Mr. Faulkner lived in the neighborhood, used the jogging trail, and participated in the first planning commission hearing as a proponent of the parking lot. There was evidence that parking had become a problem because the public was being allowed unrestricted use of the jogging trail. While we need not address here the question whether any member of the public would have standing as an "interested party," we can not conclude that Mr. Faulkner had no such standing in these circumstances.

*Id.* at 47–49, 701 S.W.2d at 708. While the *Mings* case dealt with standing under a Fort Smith ordinance setting out the procedure for bringing appeals by "interested parties," it is telling that this court chose not to extend the strict requirements for standing which it had previously imposed in cases dealing with the closure or abandonment of a street.

In the case at hand, four of the appellee landowners testified before the circuit court. Hall Ramsey, a resident of the Sandpiper subdivision in west Little Rock since about 1991, testified that his home is located less than a half mile from the Summit Mall property. He stated that he was personally opposed to the development of the property because it would make traffic worse in the area. He also worried that his property value would decrease because of traffic problems and that there was the potential for pollution. Carolyn Palmer, another landowner, testified that she resides in the John Barrow Addition and often shops in the "Chenal and Bowman area." She testified that she opposed the development of Summit Mall because it would cause traffic congestion in that area and the development would further cause a loss of trees on the property. Barry Vuletich testified as a landowner and stated that he lives approximately 1.4 miles from the site of the proposed mall and has since 1988. He cited traffic congestion, both during and after construction, the loss of "green space," and the effect the development will have on air and sound pollution as reasons he opposed the development. Finally, William Hyatt testified that he too is a resident of the Sandpiper subdivision and that his home is probably a quarter of a mile or less from the proposed Summit Mall site. His specific objections to the mall are traffic and the potential for loss to the value of his home.

In sum, several of the landowners testified that they were concerned they specifically would be adversely affected by the Summit Mall development with respect to property values, loss of green space, air and noise pollution, and traffic congestion. We are hard pressed, under these facts, to conclude that these landowners do not have standing to challenge the rezoning of a large tract of property located in their area, which has the potential to adversely impact their lives. *See, e.g., Van Renselaar v. City of Springfield*, 58 Mass. App. Ct. 104, 107, 787 N.E.2d 1148, 1151 (2003) ("We decide that, for purposes of their standing to challenge local legislation that adopts or amends a zoning ordinance or by-law, it is sufficient for these plaintiffs to have established that they will suffer an adverse impact from the legislative zoning action, without establishing, in addition, that their injury is special and different from the concerns of the rest of the community."). An adverse impact, which is the general test for standing, appears to us to be the appropriate test for standing in this matter. *See*

David Newbern & John J. Watkins, *Arkansas Civil Practice and Procedure* § 5-13 (3d ed. 2002). We decline to dismiss this matter for lack of standing.

## III. Laches

Summit Mall contends that it should have prevailed in circuit court on its defense of laches and that by ruling against it on this point, the circuit court created an infinite and timeless right to challenge zoning ordinances. It maintains that the landowners essentially sat silent for more than ten years, during which time the company detrimentally relied on the City's preliminary PCD zoning for the property in 1987 by purchasing the property for the regional shopping mall in 1995. The City agrees with Summit Mall's laches argument and adds that the question of whether the 1987 ordinance had expired was never raised by the landowners to the City Board or City Planning Commission. Indeed, the City emphasizes that the argument was not made until suit was filed in 2001. The City specifically claims that the landowners "slept upon their rights" for four years after the Board expressly extended the time for Summit Mall to file its final plan in 1997 by Ordinance No. 17,423.

The landowners respond that they filed suit within thirty days of the City's "flawed enactment" of the 2001 ordinance. They contend that the 1987 ordinance, Ordinance No. 15,385, is not at issue. Rather, the ordinance passed in 2001, Ordinance No. 18,456, is the ordinance in question. They further assert that the circuit court correctly found no evidence that Summit Mall or the City relied on anything said or done by the landowners to its detriment.

In *Richards v. Ferguson*, 252 Ark. 484, 479 S.W.2d 852 (1972), this court discussed the application of the doctrine of laches in the context of an attack on a rezoning ordinance. In *Richards*, we reversed and dismissed a chancery court decree which set aside an ordinance rezoning two tracts from single-family residential to apartment and small-business use. The opponents to the rezoning contested the rezoning before the City Board. We pointed out that the opponents had waited twenty months after the rezoning to attack the validity of the ordinance during which time the owner purchased the land. We said:

> . . . A suit such as this one seeks an equitable remedy and is subject to those defenses, including laches, that are commonly available in such proceedings. Anderson, *American Law of Zoning*, § 23.15 (1st ed., 1968). The doctrine of laches is ordinarily applied to situations in which the complainant has stood idly by while the other party has materially changed his position.

252 Ark. at 486, 479 S.W.2d at 853. We concluded that after the rezoning, the next move was up to the opponents. We stated that they failed to act until after the land purchase and expenditure for development costs. We held that the opponents had "slept upon their rights" and were precluded from seeking relief.

■ This court has summarized the laches defense by stating that it is based on the equitable principle that an unreasonable delay by the party seeking relief precludes recovery when the circumstances are such as to make it inequitable or unjust for the party to seek relief now. *See Anadarko Petroleum Co. v. Venable*, 312 Ark. 330, 850 S.W.2d 302 (1993). The laches defense requires a detrimental change in the position of the one asserting the doctrine, as well as an unreasonable delay by the one asserting his or her rights against whom laches is invoked. *See Worth v. Civil Serv. Comm'n of El Dorado*, 294 Ark. 643, 746 S.W.2d 364 (1988). *See also Goforth v. Smith*, 338 Ark. 65, 991 S.W.2d 579 (1999).

In the instant case, the landowners argue that they were timely in their challenge to Ordinance No. 18,456 and are challenging the 2001 ordinance—not Ordinance No. 15,385 of 1987. They contend that the key reason the 2001 ordinance is invalid is because the City failed to follow its own procedures in granting extensions of time over the past decade. They further contend that some landowners have only lived in the area of the proposed mall for a few years and, thus, are not subject to the defense of laches. We disagree on this last point. Mr. Ramsay testified that he had lived in the Sandpiper subdivision since about 1991, and Barry Vuletich testified that he had resided in the area since 1988. It is indisputable that some of the landowners lived in the area, knew about the proposed development, and could have lodged their challenge to the failure to extend Ordinance No. 15,385 before Summit Mall purchased the property in 1995 or before the Board extended the time for filing a final plan in 1997.

Ordinance No. 18,456 was not the first time the Board amended the original 1987 zoning ordinance. On March 18, 1997,

the Board stepped in for the first time on an extension and passed Ordinance No. 17,423, which allowed Summit Mall a third three-year extension and amended Ordinance No. 15,385 for that purpose. Moreover, before the Board acted in granting the extension, the City Planning Commission had approved two previous three-year extensions. All of this was public record. Indeed, the record reflects that specific notices were sent out to the Kensington Place Neighborhood Association and the Sandpiper Neighborhood Association prior to the City Planning Commission's public hearing on the requested extension in 1997. Certainly, if the landowners' argument concerning the lack of a timely request for an extension of Ordinance No. 15,385 by December 1, 1990, is crucial to their challenge to the 2001 ordinance, it should have been made considerably earlier than it was.

Summit Mall unquestionably relied on these uncontested extensions as evidenced by its purchase of the land in 1995 for six-and-a-quarter million dollars and its incurred expenses thereafter for development of the mall. Roderick Vosper, Regional Vice-President of New Development with Simon Property Group, testified that exclusive of litigation expense, Summit Mall had incurred expenses in the amount of $576,000. Clearly, had the landowners filed their complaint in 1991, when they claim the City erroneously extended the time for submission of the final plan, rather than waiting until 2001, and been successful, Summit Mall would not have purchased the land in 1995 for six-and-a-quarter million dollars or incurred $576,000 worth of development expenses. Indeed, had the landowners filed suit prior to 1995, the sale undoubtedly would have been stalled. If they had filed suit in 1997, after the Board itself gave Summit Mall a three-year extension, Summit Mall could have saved considerable development expenses.

The landowners contend that they are not contesting events that occurred in 1990 or 1991 relating to a timely extension request, but are only contesting passage of Ordinance No. 18,456 in 2001. Yet, the very foundation of their argument is that the City granted an extension of time in 1991, when it had no authority to do so. Thereafter, all actions of the City and Board pertaining to Summit Mall were invalid and void, the landowners contend, and the circuit court agreed. It is clear to this court that even under their theory of the case, the landowners' cause of action accrued as early as February 12, 1991, the date the City first extended the time for filing a final plan.

Because the landowners could have filed suit as early as February 1991 and failed to do so until 2001, Summit Mall bought the mall property and expended a sizeable amount of funds in 1995 and thereafter which it would not have spent had the landowners not sat on their rights. We hold that the circuit court erred in ruling against Summit Mall and the City on their defense of laches.

## IV. Referendum

Summit Mall next contends that should this court reverse the circuit court's ruling, which voided Ordinance No. 18,456, the ordinance would then be subject to a referendum. Summit Mall urges once more, under this point, that because the Board's rezoning decision is an administrative one, it is not subject to a referendum under Amendment 7 of the Arkansas Constitution. Summit Mall further asserts that rezoning by referendum would violate the general statutory scheme for land-use planning, as enacted by the General Assembly, which violates the express terms of Amendment 7. The City concurs in this argument and reiterates that under *Camden, supra*, zoning decisions are administrative and, thus, are not subject to the provisions of Amendment 7. The landowners disagree and argue again that Ordinance No. 18,456 was a legislative act by the Board and, as such, is subject to a referendum by the people. We repeat our holding that Ordinance No. 18,456 was a legislative act by the Board.

Amendment 7 reserves to the residents of munici-palities and counties the right of initiative and referendum. This court has held that the right of referendum is granted to the people on legislation, of every character, whether the legislation affects all or a part of the citizens of the municipality affected. *See Carpenter v. City of Paragould*, 198 Ark. 454, 128 S.W.2d 980 (1939). To that end, only legislative action is subject to referendum. *See e.g., Lawrence v. Jones*, 228 Ark. 1136, 313 S.W.2d 228 (1958). The decisions of city officials in certain zoning matters are legislative in nature since the state legislature has delegated the power of comprehensive planning in classifying the various areas of the city into proper zones or classifications. *See McMinn v. City of Little Rock*, 275 Ark. 458, 631 S.W.2d 288 (1982). However, as this court stated in *Scroggins v. Kerr*, 217 Ark. 137, 228 S.W.2d 995 (1950), if there is a law already enacted which authorizes the very action provided for by a later resolution or ordinance, then there is no right to have a referendum on the new measure. In other

words, only when there is a new law, and not a "procedural device for administering an old law[,]" is there a right to have a referendum. 217 Ark. at 145, 228 S.W.2d at 999.

In *Scroggins*, the issue presented was whether Little Rock Ordinance No. 8163, which authorized execution of a "cooperation agreement" between the City and the federal Public Housing Administration for the construction of certain low-rent housing projects, could be subject to a referendum petition under Amendment 7 and submitted to a vote of the people. Prior to the adoption of Ordinance No. 8163 on December 19, 1949, the City Board had adopted Ordinance No. 6010 on October 14, 1940, which authorized a "cooperation agreement" permitting the mayor to enter into agreements with the local housing authority for the erection and operation of an unspecified number of low-rent dwellings. This court found that the City Board's adoption of Ordinance No. 8163 was a legislative act, and we said:

> . . . There was no previous law which authorized what 8163 declared should be done. True, no prior law forbade what 8163 authorized, but that is not the point. The point is that without 8163 there would have been no law in Little Rock authorizing the execution of a cooperative agreement covering the particular construction and demolition, and the numerous incidental rights, privileges and exemptions connected therewith, which 8163 provided for.

> . . . .

> Ordinance 6010 was real housing legislation in this sense, since it authorized a cooperative agreement under which actual construction and demolition were to be carried out. But 6010 did not authorize the cooperative agreement that 8163 calls for, nor gives any authority for the construction and demolition that would be carried out under 8163. On that, it is enough to remember that 6010 included the express limitation that the number of "unsafe or insanitary dwelling units" to be eliminated under its authority should in no event exceed 300, whereas 8163 authorizes approximately 1000 such eliminations to correspond with the same number of new dwellings. A careful reading of 8163 shows without question that it provides for new and different housing projects, apart from and in addition to those authorized by 6010. What is to be done

under 8163 could not be done under 6010. Ordinance 8163 is a new law, and not a mere procedural device for administering some previous enactment. . . .

217 Ark. at 145-46, 228 S.W.2d at 999-1000. Ordinance No. 18,456 goes far beyond administrative zoning in accordance with a land-use plan. It is new legislation with future ramifications. We conclude that, as a legislative matter, Ordinance No. 18,456 is subject to a referendum.

In an Agreed Stipulation of Facts entered into by all of the parties in this matter prior to trial, the parties agreed to these facts:

29. After the passage of Ordinance No. 18,456, various people circulated petitions to refer Ordinance No. 18,456 to the voters for an election pursuant to Amendment 7 to the Arkansas Constitution. These petitions were tendered to the Little Rock City Clerk on May 2, 2001.

30. Little Rock City Clerk Nancy Wood determined that the petitions submitted to her office seeking to refer Little Rock Ordinance 18,456 to a referendum contained a sufficient number of valid signatures in order to refer the ordinance to a vote, assuming a referendum on this ordinance is permissible under Arkansas law. There was no evidence of fraud.

The question for the court to resolve is whether this stipulation by the parties renders the referendum issue ripe for our review so that we can order a referendum, as the landowners requested before the circuit court. We conclude that it does not.

The circuit court concluded that the referendum issue was moot in light of its decision on the merits in favor of the landowners. The court then went on to address the referendum issue anyway, in what was clearly an advisory opinion, and found that the Board's passage of Ordinance No. 18,456 was legislative action. Despite the Agreed Stipulation of Facts, the court did not rule on the landowners' prayer for an order directing the City to schedule a referendum election. Accordingly, whether a referendum election should be approved is not an issue before this court on appeal. See Trinity Universal Ins. Co. v. State Farm Mut. Auto. Ins. Co., 246 Ark. 1021, 441 S.W.2d 95 (1969).

We remand because the status of the referendum is difficult to determine from the record before us. All we appear to have at hand is an affidavit from the City Clerk that the signature petitions contain a sufficient number of valid signatures, the Agreed Stipulation of Facts by the parties, and the landowners' prayer for the circuit court to call a referendum election. Whether the landowners desire to pursue a referendum election as part of this suit or in separate litigation remains to be seen. Suffice it to say that the sufficiency of the referendum petitions is not an issue before this court in this appeal.

Because we reverse on the basis that the landowners' complaint was barred by laches, we need not address the other issues raised by Summit Mall and the City.

Reversed and remanded.

IMBER, J., concurs.

ANNABELLE CLINTON IMBER, Justice, concurring. I agree that this case should be reversed and remanded. However, I cannot subscribe to the majority's effort to distinguish this court's decision in *Camden Cmty. Dev. Corp. v. Sutton*, 339 Ark. 368, 5 S.W.3d 439 (1999). Specifically, this court will henceforth determine whether a zoning proposal is legislative or administrative in nature by looking at whether the city board passed or rejected the proposal. Additionally, I do not agree with the majority's implication that the landowners's cause of action accrued as early as February 12, 1991, when the City Planning Commission granted Summit Mall additional time to file a final plan.

### Rezoning — Legislative Proposal

In *Camden Community Dev. Corp. v. Sutton*, 339 Ark. 368, 5 S.W.3d 439 (1999), a majority of this court held that a rezoning proposal was not legislative in nature. Thus, the court held that the proposal was not subject to the initiative process under Amendment 7 of the Arkansas Constitution. In that case, the Camden Community Development Corporation sought permission to re-zone its property. *Id.* The City of Camden's Planning Commission recommended the proposal, but it ultimately failed to be adopted by the City Board. *Id.* The appellant in *Camden* then managed to get its petition to rezone on the general election ballot. *Id.* A trial court ruled that the "issues concerning whether to rezone are

administrative decisions, not legislative, and thus are not subject to the initiative process." *Id.* A majority of this court affirmed that ruling. *Id.*

The majority holding in *Camden* was stated as follows:

Specifically, we have determined that the facts of this case do not reflect the occurrence of any legislative action by the City Board . . . [T]he City Board's decision to not accept the Commission's administrative proposal was only a rejection of the proposed administrative action and did not constitute any legislative action or administrative action by the City Board.

Camden v. Sutton, 339 Ark. at 373, 5 S.W.3d at 442.. Moreover, the majority labeled the planning commission's recommendation to re-zone as a "proposed administrative action." *Id.* The court's opinion noted the decision in *Wenderoth v. City of Fort Smith,* 251 Ark. 342, 472 S.W.2d 74 (1971), in which we concluded that zoning ordi-nances were legislative in nature, and overruled *Wenderoth* to the extent that it was inconsistent with the majority opinion. *Camden v. Sutton, supra.*

I reiterate the thrust of my dissenting opinion in *Camden:* The majority erred in holding that a rezoning proposal rejected by the City Board is not legislative in nature. The fallacy in such a holding is particularly apparent in light of our holding in *City of Lowell v. M & N Mobile Home Park, Inc.,* 323 Ark. 332, 916 S.W.2d 95 (1996), where the city council denied a zoning request that was not recommended by the planning commission. Nonetheless, we stated that "[i]n recent years, we have frequently written that the judicial branch does not have the authority to review zoning legislation *de novo,* as that would constitute an unconstitutional taking of the power of the legislative branch." *Lowell v. Mobile Home, supra.* The *Camden* holding is even more remarkable in view of our recent statement in *Murphy v. City of West Memphis,* 352 Ark. 315, 101 S.W.3d 221 (2003), that zoning ordinances are legislative enactments. In fact, it is well-settled that zoning ordinances are as a general matter legislative actions. *See Murphy v. City of West Memphis, supra; Lowell v. Mobile Home, supra; City of Little Rock v. Breeding,* 273 Ark. 437, 619 S.W.2d 664 (1981); *City of Conway v. Housing Authority,* 266 Ark. 404, 584 S.W.2d 10 (1979). It neces-sarily follows that a recommendation to rezone is a recommenda-tion to take legislative action.

Turning now to the dichotomy created by the majority's attempt to distinguish *Camden* from the case at bar, the majority hinges its distinction upon whether a city board rejects or adopts a rezoning proposal. The majority also asserts that the facts in the *Camden* case are different. The only factual difference, however, between *Camden* and the instant case is that in *Camden* the City Board rejected the rezoning proposal recommended by the planning commission; whereas, in this case the City Board passed a rezoning proposal recommended by the planning commission. In both cases, the proposed zoning ordinances were properly before the City Boards pursuant to Ark. Code. Ann. § 14-56-422 (Repl. 1998). The majority opinion illuminates the grave error made by the *Camden* court; that is, *Camden* erroneously focused on the action taken by the City Board, as opposed to the *nature* of the proposal at issue. Moreover, the majority now compounds the error of law made in *Camden*.

Today this court has effectively bifurcated the people's power under Amendment 7 to the Arkansas Constitution. Amendment 7 reserves the people's initiative *and* referendum powers to the local voters of each municipality and county "as to all local, special and municipal legislation of every character in and for their respective municipalities and counties, but no local legislation shall be enacted contrary to the Constitution or any general law of the State." According to the majority opinion in this case and in *Camden,* the people reserve the right to *refer* a rezoning ordinance enacted by the City Board, but do not reserve the power to *initiate* a rezoning ordinance. Amendment 7 does not support such a distinction. We have long held that Amendment 7 is to be liberally construed in order that its purposes may be effected. *Greg v. Hartwick,* 292 Ark. 528, 731 S.W.2d 766 (1987); *Leigh & Thomas v. Hall,* 232 Ark. 558, 339 S.W.2d 504 (1960). Allowing rezoning to be subject to a referendum but not to an initiative process narrowly construes and distorts the powers granted in Amendment 7.

In sum, I believe that the majority opinion, in its valiant effort to distinguish *Camden* from the case at bar, improperly separates the initiative and referendum powers reserved to the people under Amendment 7. The plain language of Amendment 7 makes no such distinction. The legislative nature of a rezoning proposal is static; it does not change upon a vote by the legislative body. The *Camden* majority held that a rezoning proposal was not subject to the initiative process under Amendment 7. Thus, if we

are to remain faithful to the *Camden* decision, the rezoning issue here should not be subject to a referendum under Amendment 7.

In concurring today, I merely reiterate my dissent in *Camden*. Rezoning is legislative in nature and subject to the people's initiative and referendum powers under Amendment 7 to the Arkansas Constitution. Because the instant case and *Camden* are factually indistinguishable, I believe this court should acknowledge its mistake and overrule that decision.

### Laches

In holding that the landowners' complaint is barred by the doctrine of laches, the majority opinion relies primarily on our decision in *Richards v. Ferguson,* 252 Ark. 484, 479 S.W.2d 852 (1972). In that case, we applied the doctrine of laches based on a failure to timely attack a rezoning ordinance. In this case, the majority ties laches to a time extension approved by the City Planning Commission on February 12, 1991. While I agree that the time extension was a matter of public record, it is unnecessary to hold that the landowners's cause of action accrued upon the City Planning Commission's approval of a time extension because the landowners waited four years from the City Board's enactment of an ordinance permitting a three-year time extension. In my view, the doctrine of laches precludes the landowners from seeking relief because they "slept upon their rights" after the City Board expressly extended the time for Summit Mall to file its final plan by the enactment in 1997 of Ordinance No. 17,423.